### JACOB BUSH v. STATE.

No. 1825.   Decided May 29, 1912.

Rehearing granted November 27, 1912.

**1.—Selling Intoxicating Liquors Without License—Recognizance.**

Where the appeal was dismissed on account of an insufficient recognizance, but a sufficient recognizance was filed thereafter, the appeal will be reinstated.

**2.—Same—Charge of Court—Accomplice.**

Where, upon trial of retailing intoxicating liquors without license in non-local option territory, the evidence showed that two of the ·State's witnesses were accomplices, a failure to charge on accomplice testimony as requested was reversible error.

**3.—Same—As to Who Are Accomplices.**

Where, upon trial of retailing intoxicating liquors without license, the evidence showed that two of the State's witnesses upon whose testimony the conviction rested had agreed with the sheriff at the rate of three dollars per day to find violators of the liquor law, and that they induced defendant to sell liquor to them without having license to retail liquor in non-local option territory, they were accomplices and the court should have submitted the question of accomplice testimony.

**4.—Same—Rule State.**

Where a party receives money for the purpose of inaugurating and bringing about violations of the law, and in accordance with such agreement, brings about such violation, he is an accomplice.

**5.—Same—Distinction Drawn.**

There is a distinction between parties who are playing the role of detective for the arrest and punishment of parties, and those who originate the crime or assist in originating it in the first instance; the latter are accomplices, while the former are not.

Appeal from the County Court of Dallas County at-Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of unlawfully retailing liquors without license; penalty, a fine of $500 and five days confinement in the county jail.

The opinion states the case.

*Lively, Nelms & Addams,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—The appeal must be dismissed because of the insufficiency of the recognizance. That instrument fails to recite the amount of punishment assessed against appellant. This, under the statute and decisions, renders that instrument so defective that it cannot attach the jurisdiction of this court.

The appeal is dismissed.                              *Dismissed.*

Prendergast, Judge, not sitting.

ON REHEARING, NOVEMBER 27, 1912.

DAVIDSON, Presiding Judge.—The appeal was heretofore dismissed for want of sufficient recognizance. This has been supplied, wherefore the appeal is reinstated.

The affidavit and information contain quite a number of counts alleging violations of the liquor laws in different ways.

The court charged the jury that if appellant did sell directly or indirectly spirituous and vinous liquors capable of producing intoxication in quantities of one gallon and less, towit: one bottle of whisky to J. W. Gilmore, without having first applied for and obtained a license under the laws of the State of Texas as a retail liquor dealer and did then and there unlawfully in a certain locality in said county and State where local option was not then and there in force, sell directly or indirectly spirituous and vinous liquors capable of producing intoxication, etc., they would assess his punishment at a fine not less than five hundred dollars and not more than one thousand dollars, and by imprisonment in the county jail for a term not to exceed six months. The court further instructed the jury that one sale would not constitute a liquor dealer; that they must find and believe from the evidence that there was more than one sale before they could convict the defendant.

Appellant requested a special charge instructing the jury that if they find two of the State's witnesses, Gilmore and Hopkins, were accomplices, they could not convict upon their testimony unless corroborated, etc. Gilmore testified that he lived in Dallas County at Lisbon, and saw appellant on the 6th of July at his place of business, which is on the corner of Dexter Avenue and Cockrell Street, about

4 o'clock in the afternoon and bought from him a half pint of whisky, paying him 35 cents for it, and recognized a bottle then handed him by the county attorney as the one he bought. He says he also bought another half pint bottle of whisky from appellant, which was also handed him by the county attorney, and that he paid for this bottle personally at the time L. H. Hopkins was with him. He also states that Peck was with him when he bought the bottle of whisky from the defendant on the 8th of July, but Peck was not with him when he bought the other bottle, but that Hopkins was with him both times; that Hopkins bought a bottle of beer from the defendant at the same time. On cross-examination he says: "I am a country boy. and live out in the country in Mr. Miller's neighborhood. Mr. Barry Miller represented me in a case once. I had no printed commission from Mr. Brandenberg, and I never took an oath as deputy sheriff. Mr. Brandenberg just asked me if I would do what he asked me to do, and he paid me $2 per day for my services, and I was to go where he told me to go. I was to go out in prohibited territory and not to work down town in the saloon district. I bought liquor with the dollar a day expense money, and paid street car fare with it. Mr. Brandenberg did not say what he gave it to me for, only said it was for expense money. He said he would allow me a dollar per day for expense money. I did not pay hotel bills with it, but used the dollar a day expense money to buy this whisky and street car fare, and such things. In addition to the one dollar a day expense money I got two dollars per day for my work. I don't remember just how many days I worked, as I was at home part of the time, but Mr. Brandenberg paid me $26 one time and $7 another time, not expense money, but wages for work." He says, "At the time I bought the whisky I saw defendant in the store on the corner of Dexter and Cockrell Streets; it was a small store, and I think may be there were a few canned goods and tobacco in it. I did not notice any name or any sign on the store. Defendant was in there at the time, but I don't know whether he was proprietor of that store or not; I just heard he was working there."

Hopkins testified that he knew Gilmore, Peck and defendant; saw defendant sell Gilmore a bottle of whisky on the 6th of July, and saw Gilmore pay defendant for it. "I also saw defendant sell to Gilmore a bottle of whisky on the 8th of July, 1911, which was a half pint of whisky, and Gilmore paid defendant 35 cents for it." Witness says he bought two bottles of beer, one on each date. He says when Gilmore bought that whisky it was to be put aside and kept; that they did not intend to drink it. The beer they bought to drink. This witness also testified he was paid two dollars a day for his work, and knew that the people who sold them the liquor were violating the law. "I knew he would be violating the law to sell it to me when I asked for it, both of us knew that. Gilmore and I were each getting two dollars per day for our work, and each of us were

getting a dollar per day for expense money. I do not know who was the proprietor of the place where we bought the liquors from defendant; don't know whether he was the proprietor of that place or not.'' It is unnecessary to state Peck's testimony. He testified he was with Gilmore and Hopkins on the 8th of July when they made the purchases, but was not with them on the 6th.

. It seems from this testimony that Hopkins and Gilmore were working for Mr. Brandenberg, the sheriff, at the rate of three dollars per day, two of which they were to retain, and the other he gave them for expense money. With the expense money these witnesses purchased the liquor. They knew when they went into it this would bring about violations of the law and agreed with the sheriff so to do. Under this testimony we are of opinion the charge asked by appellant should have been given the jury in regard to the law of accom- plices 'testifying as witnesses and submitting that question for the decision of the jury. The statute in regard to purchasers in local option territory provides that such purchaser shall not be an accomplice. This statute, however, only applies to local option territory, and it is unnecessary here to discuss its provisions and effect. There is no statute that we have been able to find which relieves these parties from being accomplices. We are of opinion that where a party receives money for the purpose of inaugurating and bringing about violations of the law, and in accordance with the agreement bring about such violations he is and would be an accomplice. Wherever a party deliberately or intentionally originates or succeeds in bringing about a violation of the law, he becomes a particeps criminis of that violation, and therefore when used as a witness must be corroborated. There is a line of cases which hold that where an officer or other parties understand or is led to believe that a violation of the law is in contemplation and take steps to detect that crime, or get evidence by which the guilty parties may be punished, he would not be an accomplice, but in such cases he is not an original party to the bring- ing about the crime and is not guilty of originating or initiating it. In that character of case his connection with it is after the inception of the crime and after it has been determined upon and he only then gets into it as a detective or for the purpose of arresting the party and bringing him to punishment. There is another line of cases which holds that where the party originates the crime or is instrumental in its initiation and brings it about, he then becomes a particeps criminis and when testifying as a witness in the case is an accomplice. The leading case in this State is Dever v. State, 37 Texas Crim. Rep.; 396; Steele v. State, 19 Texas Crim. App., 425. The opinion was by Judge Hurt and draws the distinction above mentioned between parties who were playing the role of detective for the arrest and punishment of parties and those who originate the crime or assist in originating it in the first instance. We are of opinion therefore the charge requested by appellant's counsel in regard to accomplice testimony should have.

been given. Because it was not, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*