### J. V. PINSON V. STATE.

. No. 2015.   Decided November 27, 1912.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained a conviction of murder in the second degree, there was no error.

**2.—Same—Charge of Court—Practice on Appeal.**

Where the complaint to the charge of the court in the motion for new trial did not point out or specify any special defect therein, the same could not be considered on appeal.

**3.—Same—Newly Discovered Evidence—Want of Diligence.**

Where the motion for new trial on the ground of newly discovered evidence showed a want of diligence on the part of the defendant to discover the same, and the same was of an impeaching character, there was no reversible error.

**4.—Same—Special Venire—Bill of Exceptions.**

In the absence of a bill of exceptions, the complaint that defendant had no special venire in the case, cannot be considered on appeal.

**5.—Same—Charge of Court—Intent—Killing of Third Party—Charge as a Whole.**

Where, upon trial of murder, defendant claimed that he unintentionally killed deceased in trying to kill a third party, and objected to one paragraph of the court's charge on the ground that the question of provocation by some other person than the deceased had not therein been submitted, and the charge of the court, considered as a whole, submitted every phase of defendant's theory of defense, there was no reversible error.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*I. D. Fairchild,* for appellant.—On question of the court's charge on provocation: Johnson v. State, 22 Texas Crim. App., 206; Childers v. State, 27 S. W. Rep., 133.

On question of newly discovered evidence: Hickman v. State, 25 S. W. Rep., 126; McVey v. State, 5 S. W. Rep., 174.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was indicted for the murder of Isaac Polk on January 21, 1911. Before the trial the State conceded that murder in the first degree was not in the case, and it was tried only on the theory of murder in the second degree or manslaughter. The appellant was convicted of murder in the second degree and his penalty fixed at seven years in the penitentiary.

While the statement of facts is rather lengthy, the questions raised and submitted were few and the testimony on those issues largely repetitions. The killing occurred at a negro dance at night about the date charged. At this dance there was a mixed crowd of men and women and much drinking of intoxicating liquors by the men, a considerable number of them under the influence of liquor, if not drunk. More than one row and fight was had during the night. It is unnecessary to state all of these because none of them had anything to do with the facts of this case.

It seems that some time, the testimony ranging from a few minutes to perhaps two hours, but the more reasonable theory from all the evidence we conclude is that some ten or fifteen minutes, or a few minutes before the killing, one Spence Bradford had a fight with a negro by the name of McElwee, in which said Bradford knocked McElwee down, or knocked him to his knees about the door, and he then crawled or got out at the door and then went off. It seems that Alex Pinson, a brother of appellant, took up the said difficulty with Spence Bradford, taking McElwee's part, and proceeded to draw his knife upon and strike said Bradford. They then separated. It appears that this Pinson, appellant's brother, then went back into the dance hall.

From this point the evidence between the State's witnesses and the defendant's is directly and pointedly contradictory. The State's witnesses, and among them said Spence Bradford, all testified that Spence Bradford immediately left the assembly, went across the street to an old house where he had left his gun; that when he came to the dance that night he came from a hunt with his gun and brought it and placed it in this old house; that immediately after getting the gun he went straight on from there to his home and did not at any time after he left the dance hall go back to or near it. The State's witnesses, in substance, testify that soon after this some one,—not Spence Bradford,—appeared at the door of the dance hall and pointed a gun therein, and that some one of the crowd exclaimed, "Look out, Alex, you will get shot." By Alex is meant the said brother of appellant; that thereupon there was a rush made for the door and a great many came out, some leaving and others lingering. It was about time for the dance to break up and it did immediately afterwards break up; that then for the first time appellant appeared on the scene with a loaded pistol; that right at the door four persons were standing practically in a row, the deceased being one of them; that these four persons had been standing there for

some little while; that appellant approached these persons and when within a few feet of them, asked who was that tried to shoot his brother, and that John Bradford, a brother of said Spence Bradford, replied, "It was not me." Appellant then asked the deceased, and deceased said, "It was not me, Mr." Appellant replied, "Yes, it was, you dam son-of-a-bitch," and immediately shot him in the stomach, from which wounds he died the next day; that appellant was so close to deceased when he shot him that it set his clothes on fire. The evidence from all sources shows that deceased had not been in any of the fusses and had had nothing to do in any way with the fight between Spence Bradford and McElwee, nor between Spence Bradford and appellant's brother. In fact, was an entirely innocent bystander and had had nothing whatever to do or say to appellant or in his presence or hearing other than to tell him upon his inquiry as stated above that it was not he who had been trying to shoot appellant's brother.

The appellant and his witnesses, by their testimony, show that after the fight between appellant's brother and Spence Bradford, above shown, Spence Bradford left and went somewhere and got a gun and that he did come back to the door of the dance hall and poke a gun therein and when the warning was given for Alex, appellant's brother, to look out or he would get shot, that said Spence Bradford then got back with the three other persons who were standing close to the door, and that it was Spence Bradford and not his brother, John Bradford, who was one of the four standing in a row at the time appellant killed deceased; that when appellant appeared on the scene, facing these four persons, and demanded to know who it was that had been trying to shoot his brother, Spence Bradford replied, in effect, "What is that to you?" Appellant replied, "Alex is my brother," and that thereupon Spence Bradford attempted to draw or thrown his gun down on appellant, and that appellant shot with the intention of shooting said Spence Bradford in self-protection, and that he did not intend to shoot the deceased.

The evidence further discloses, on behalf of the State, that when appellant shot deceased that two of the four persons who were standing at the time then caught appellant and attempted to hold him, and that one of the Bradford boys ran in the hall, and appellant said to those holding him, or attempting to hold him, "Wait, I want to shoot that dam son-of-a-bitch." It is unnecessary to give any further detail of the evidence at this point to discuss appellant's complaints.

He contends that the evidence is insufficient to sustain the verdict of murder in the second degree. We have carefully gone over it and considered it all, and in our opinion the evidence does clearly justify the verdict.

There are some general complaints in the motion for new trial to some paragraphs of the court's charge, but they are so general that they do not point out or specify any special defect therein. Appel-

lant requested no charge at all. The court submitted muraer in the second degree, self-defense, and manslaughter.

Among other grounds of appellant's motion, he contends that a new trial should be granted because of newly discovered evidence. The motion itself, and the affidavits accompanying it, in our opinion, do not show that appellant used any diligence to discover it, or that he could not have discovered it by the proper diligence. But even if that point was met, the affidavits attached of the purported newly discovered evidence show that it was solely impeaching in its character of the testimony of one or more of the State's witnesses. The court committed no error in not granting a new trial on this ground.

Another complaint of appellant to the action of the court in not having a special venire in the case is not shown by bill of exception. The court refused appellant's bill on that ground, and without a bill we can not consider the question.

Appellant complains of this paragraph of the court's charge: "In this case, if the evidence satisfies you beyond a reasonable doubt that the defendant unlawfully, purposely and intentionally shot Isaac Polk with a pistol and thereby killed him, and that such killing took place when Polk was doing nothing and had not done anything by word or act which justified a reasonable apprehension or fear of death or serious bodily injury at his hands towards defendant, and when Polk had given him no provocation sufficient to arouse passion in the mind of a man of ordinary temper sufficient to render his mind incapable of cool reflection, then the law implies or infers the existence of malice, and you would find that the offense is murder in the second degree, no matter what amount of provocation had been given towards defendant by some other person or persons and no matter what degree of passion defendant may have labored under arising from such provocation, if any, given by another or others and not by Polk," claiming that the evidence did not justify the charge and that it failed and omitted to distinctly instruct the jury upon all the law applicable to said cause, in that it omitted to instruct the jury that if appellant was attempting to kill Bradford and unintentionally killed deceased, and that he had an adequate cause to kill Bradford, and if he had killed Bradford that appellant could be convicted of no higher degree of offense than manslaughter, and ignored the defendant's theory of an attempt to kill Bradford and of his rights arising out of a cause to kill Bradford.

The evidence of the State, if believed, would specially and clearly call for just such charge as was given on this subject, and it was the duty of the court under the facts of this case to have given this charge. Of course, all of the law of a case and of the various issues arising therein can not be given in one paragraph, but it is elementary that in considering objections to separate paragraphs of the court's charge, all of it must be taken and considered together. In other and separate paragraphs the court did properly submit the

other theory of the case contended for by appellant in his objection to this paragraph of the charge.

The court fully and correctly submitted manslaughter and also self-defense by appellant against the assault or contemplated assault upon him, as claimed by him and his witnesses, of Spence Bradford and, in effect, told the jury that if appellant on this occasion acted in self-defense of the attack of Spence Bradford upon him and that in shooting he intended to kill Bradford and not deceased, and killed deceased accidentally, to acquit him. There is no complaint anywhere of the court's charge on self-defense. The court also in his charge properly submitted the question of manslaughter, and if appellant would not have been guilty of any higher offense than manslaughter if he had killed Spence Bradford, instead of deceased, that he would be guilty of manslaughter and in such event only find him guilty of manslaughter. The court also charged that if the jury had any doubt as to whether the killing was manslaughter or murder in the second degree, to give appellant the benefit of the doubt and find him guilty only of manslaughter. Taking the charge as a whole, it clearly and properly submitted the State's theory, the defendant's theory, his claimed self-defense and manslaughter, and no reversible error is presented. The judgment will, therefore, be affirmed.                                                *Affirmed.*