## Z. Z. SAVAGE V. THE STATE.

No. 3273.    Decided November 4, 1914.

**1.—Bribery—Indictment—Proof—Subpoena.**

Upon trial of offering to bribe a witness, where the subpoena for the witness was set out in the indictment, it was not necessary to introduce the same in evidence, as it was shown by other testimony that the alleged witness was duly summoned, and there was no evidence to the contrary. Davidson, Judge, dissenting.

**2.—Same—Evidence — Declarations of Defendant — Cross-examination— Other Offenses.**

Upon trial of bribing a witness, there was no error in permitting testimony as to a conversation between the prosecuting witness and the defendant with reference to and subsequent to the transaction set out in the indictment, and in which defendant offered to pay the witness money if he would leave the country and not testify in that and other cases in which he was a witness, as this matter not only showed a tampering with the witness, but was also legitimate cross-examination on matter brought into the case by the defendant himself. Davidson, Judge, dissenting.

**3.—Same—Rule Stated—Tampering with Witness.**

If defendant authorized or was present when money was offered or paid a witness in a pending case to leave, or himself attempted to, or did tamper, with such witness, proof of same was admissible. Following Booth v. State, 52 Texas Crim. Rep., 452, and other cases.

**4.—Same—Evidence—Written Statement—Grand Jury.**

Where, upon trial of bribery of defendant and others, it was shown that one of the defendants went before the grand jury and made a voluntary statement which was reduced to writing and signed by him, and all the defendants were jointly indicted and tried, there was no error in admitting said written statement in evidence as against the defendant who had made the same, and afterwards instructing the jury that there was not sufficient evidence against said defendant to convict him and entirely withdrawing said statement from the jury, instructing them that it could not be considered for any purpose; no improper conduct of the district attorney appearing. Davidson, Judge, dissenting.

**5.—Same—Accomplice—Charge of Court.**

Where, upon trial of bribery, the evidence did not more than raise the question that one of the State's witnesses was an accomplice, there was no error in submitting this question to the jury instead of peremptorily instructing them that he was an accomplice. Davidson, Judge, dissenting.

**6.—Same—Accomplice—Detective—Rule Stated.**

If it be true that the prosecuting witness did not originate the crime of offering to bribe a witness or was instrumental in its initiation, even though he agreed to accept the money upon the instructions of the officers and reported to them, he was not an accomplice, and where this was a question of fact, the court correctly submitted the same to the jury. Following Bush v. State, 68 Texas Crim. Rep., 299, and other cases. Davidson, Judge, dissenting.

**7.—Same—Charge of Court—Verdict.**

Where the court instructed the jury that where several defendants were tried together, as in this case, the jury may convict such of defendants as they may believe from the evidence beyond a reasonable doubt are guilty, and acquit the others, and the verdict only convicted the defendant out of four, the complaint that the court charged the jury that they must find all of the defendants guilty is not well taken. Davidson, Judge, dissenting.

**8.—Same—Charge of Court—Corroboration—Other Transactions.**

Where, upon trial of several defendants of bribery, in which appellant was convicted, there was certain testimony as to a conversation between defendant and the alleged bribed witness subsequent to the transaction charged in the indictment, in which he offered him money to leave the country to evade testifying in that and other pending cases, there was no error in the court's failure to separately charge thereon; neither was corroboration necessary as to the testimony of subsequent transactions to the one on trial. Davidson, Judge, dissenting.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial of offering to bribe a witness by defendant and others, wherein defendant was convicted, the evidence was sufficient to sustain the conviction, there was no error on that ground. Davidson, Judge, dissenting.

**10.—Same—Accomplice—Charge of Court.**

Where, upon trial of offering to bribe a witness, the court instructed the jury that if they believed the said witness was an accomplice and his testimony tended to connect the defendant with the commission of the offense, etc., the same was reversible error. Following Oates v. State, 51 Texas Crim. Rep., 449, and other cases.

**11.—Same—Rule Stated—Accomplice—Charge of Court—Corroboration.**

A charge of the court is error which only requires testimony of an accomplice to tend to connect the defendant with the offense; the charge must require that the testimony of the accomplice connects the defendant with the offense charged, and that the corroborating testimony tends to connect the defendant with the offense.

Appeal from the District Court of Potter. Tried below before the Hon. James N. Browning.

Appeal from a conviction for offering to bribe a witness to leave the country and not testify; penalty, two years in the penitentiary.

The opinion states the case.

*Reeder & Dooley,* for appellant.—Where a defendant is on trial for

the offense of offering to bribe a witness, testimony of a subsequent bribery of such witness is inadmissible: Fore v. State, 5 Texas Crim. App., 251; Williamson v. State, 13 id., 514; Chumley v. State, 20 id., 547; Johnson v. State, 57 Texas Crim. Rep., 308, 123 S. W. Rep., 1105; Windham v. State, 59 Texas Crim. Rep., 366, 128 S. W. Rep., 1130; Saldiver v. State, 55 Texas Crim. Rep., 177, 115 S. W. Rep., 584; Hinson v. State, 51 Texas Crim. Rep., 102, 100 S. W. Rep., 939; Lightfoot v. State, 106 S. W. Rep., 345; Williams v. State, 38 Texas Crim. Rep., 128.

Declarations or confessions of an alleged co-conspirator or accomplice of defendant after the alleged commission of the crime are inadmissible: Allen v. State, 8 Texas Crim. App., 67; Simms v. State, 10 id., 131; O'Quinn v. State, 55 Texas Crim. Rep., 18; Shiflett v. State, 51 id., 530; Day v. State, 62 Texas Crim. Rep., 448, 138 S. W. Rep., 130.

On question that subpoena must be introduced in evidence: Alford v. State, 8 Texas Crim. App., 545.

Upon court's failure in not affirmatively charging the jury that the State's witness Barkley was an accomplice: Davis v. State, 70 Texas Crim. Rep., 524, 158 S. W. Rep., 288; Steele v. State, 19 Texas Crim. App., 425.

Upon court's charge authorizing the jury to convict one or more of the defendants, etc: Tittle v. State, 30 Texas Crim. App., 597; Dill v. State, 1 id., 278.

Upon court's failure of peremptorily instructing the jury that State's witness Barkley was an accomplice: Davis v. State, 70 Texas Crim. Rep., 524, 158 S. W. Rep., 288; Dever v. State, 37 Texas Crim. Rep., 396; Morawitz v. State, 46 id., 436.

Upon question of corroboration of an accomplice: Carden v. State, 62 Texas Crim. Rep., 545, 138 S. W. Rep., 598; Pelton v. State, 60 Texas Crim. Rep., 412, 132 S. W. Rep., 480.

Upon question of accepting a bribe to disobey a subpoena, which makes witness an accomplice: Ruffin v. State, 36 Texas Crim. Rep., 565; O'Brien v. State, 6 Texas Crim. App., 665.

On question of court's charge on accomplice testimony: Cases cited in opinion.

*C. E. Lane,* Assistant Attorney General, and *Henry S. Bishop,* District Attorney, for the State.

DAVIDSON, JUDGE.—Appellant was indicted for offering to bribe the witness J. M. Barkley in a case wherein Frank Engman was defendant charged with violation of the local option law in Potter County.

The indictment charges a conspiracy and acting together between Savage and others. Barkley testified practically that appellant, Thomas, Engman and Plemons offered to bribe him as a witness in the case to disappear from the country and not testify. The indictment alleges also, after setting out the subpoenas alleged to have been served upon Barkley, that they were served by a deputy sheriff named S. D. Riddings. The

statement of facts shows that Steve Riddings was introduced as a witness. The only question asked him was as to his name. The contention is made that inasmuch as the indictment charges that the subpoena was served by S. D. Riddings, that the subpoena ought to have been introduced in evidence before the jury, and that proof also should be made that Riddings served the papers as charged. Whether it was necessary or unnecessary to set out the subpoenas in the indictment, and the further fact that S. D. Riddings as an officer served the process upon Barkley as a witness, it should have been proved to meet the allegations in the indictment. The subpoenas were not introduced nor was S. D. Riddings asked any questions in reference to the matter so far as the statement of facts is concerned or bill of exceptions. This was error.

The first bill of exceptions recites that the witness Barkley was permitted to testify to a conversation occurring between himself and appellant at the Elks hotel subsequent to the transaction set out in the indictment, in which he states that appellant offered to pay him some money in connection with this and other cases in which Engman was defendant. Many objections were urged, among others, that it was not res gestae and an independent transaction and could not be introduced to show system or intent. There are quite a lot of cases cited showing that testimony of this character could not be introduced on the question of system, and also quite a number of cases showing that the testimony under the facts of this case could not be used to show intent on the part of Savage. It could not be introduced for these purposes. If Savage offered to bribe in the manner indicated in the indictment, there was no question of his intent, because the facts shown by the witness made the case complete so far as his testimony could make it. He says he was offered and received money to absent himself from the country, and not only so but did leave, and that Plemons and Scott went with him in the direction of Tucumcari, New Mexico. He says Plemons bought his ticket from Amarillo to El Paso and gave him in addition money amounting to thirteen dollars and some cents. If this money was paid to bribe Barkley there was no issue as to intent. The facts carry the intent with it in the consummation of the act. The subsequent offers to bribe could not be used for that purpose in this case. Extraneous crimes may be used to develop intent or connect the party with the transaction on trial, or to develop the res gestae or to show system in a proper case. This evidence does not bring the case within any of these rules. It could not be used to corroborate Barkley, because Barkley was an accomplice and could not corroborate himself, and no other witness testified to the fact that the conversation ever occurred. If it was admissible at all, it was upon the theory that the conversation between the defendant and Barkley was with reference to the case here charged. The contention seems to be that this is admissible under the case of Carden v. State, 62 Texas Crim. Rep., 545. The writer, however, is of the opinion that the testimony was not admissible under that authority under the facts of this case. The majority are of the opinion the evidence was admissible.

Another bill recites that C. G. Thomas, one of the defendants, went before the grand jury and made a written statement in which he exculpated himself entirely from having anything to do with the bribery, but made statements criminative of his co-defendants. This was made after the transaction was complete on which the indictment was based and by a party who is charged with the same offense as the alleged co-conspirators. Many objections were urged to this testimony, which ought to have been sustained. It had no place before the jury. The statement of a co-conspirator inculpating other co-conspirators made after the transaction can not be used in evidence against anybody except the party making the statement, therefore it could not be used against Savage and Plemons and should not have been admitted. The statement was exculpatory entirely of the maker of the statement, and was an indirect way of getting before the jury the statement of Thomas before the grand jury stating matters upon which the State sought to make its case against the others, at least the statement of Thomas if true was inculpatory of them. The testimony could not thus be used, and was not admissible. We make the further statement that this was original testimony introduced by the State, therefore the question of impeachment does not arise. After the case on the facts was completed, the district judge instructed the acquittal of Thomas, and then withdrew Thomas' written statement above mentioned from the consideration of the jury. Many opinions have been written, and it would seem like a sufficient number, to the effect that illegitimate testimony can not be introduced and then controlled by the charge of the court. It being clearly inadmissible against Savage, the instruction of the court, first, that it could only be considered against Thomas, and then subsequently withdrawing it entirely from the jury, did not cure the error. It is of sufficient importance to reverse this judgment. The court makes this statement qualifying the bill: "The statement complained of in this bill, when admitted in evidence, was admitted solely as to defendant C. G. Thomas, who made the same, and the jury were then specially instructed by the court not to consider it as any evidence and for any purpose as against the other defendants. After the testimony was closed the court in the fifth paragraph of his charge withdrew this statement altogether from the jury." The court recognized by this statement that it was error to introduce this testimony against the other two parties and that it could only be used against Thomas. It entirely exculpated Thomas.

There are quite a number of exceptions to the court's charge properly taken before being read to the jury and verified by the district judge. There are quite a number of special requested instructions refused by the court, which were offered in proper time, as verified by the judge. All of these questions are properly presented for adjudication. The court submitted the question to the jury as to whether Barkley was an accomplice or not. Appellant insists the court should have instructed the jury positively and directly that Barkley was an accomplice. Under this record this contention is correct. That Barkley was an accomplice

is not a debatable issue under the facts. He testified, in substance, that they offered him money to leave the country, going into detail as to the transaction; that Plemons bought the ticket at Amarillo, paying $16.95 for it; that they would carry him in an auto to some point on the railroad leading from Amarillo to El Paso, and pay him in addition $23.05. That they reached the designated point where he was to take the railroad for El Paso and a controversy ensued between him and Plemons as to the amount of money he was to get, Plemons contending that he was to have ten dollars of the forty for conveying Barkley to this point on the railroad, and Barkley contending that he was to have the entire forty dollars, resulting, as Barkley says, in his getting $13.45 and the railroad ticket, $16.95, and Plemons retaining ten dollars. He then got into communication with the sheriff at Amarillo over the telephone; who came after him, as well as Plemons and Thomas, who had been in the auto with him to this point. They were all carried back to Amarillo next morning, and this prosecution followed. The evidence is further to the effect if there was any bribery at all, that he solicited the offer of the bribe and continuously so until it was offered and then he accepted it. He testifies that he was working on this matter in connection with the sheriff's department and the district attorney. That he had plead guilty to passing what he called "bad checks" and was working at the courthouse paying the fine. That he had other cases and trouble with the courts some of which were pending. It is unnecessary to repeat all of the statements showing the relation of this witness to the case. It is useless for the court to assume, under the circumstances and statements as made by this witness, that there was any question or issue as to his being an accomplice. The authorities in Texas are so clear and positive and uncontradictory upon this question that it ought not to be debatable. Under this witness' evidence he went into a scheme to work up a case against these parties at the beginning in order to get them into trouble, and that having done so he accepted the money and railroad ticket and agreed to leave the country and did start to El Paso and later on did in another instance leave the country, and he testifies that appellant Savage sent him money to different points in Texas, California and Arizona to keep him out of the country in the latter instance. There could be no question that Barkley was an accomplice, made so by his own testimony. The court should have instructed the jury positively that he was an accomplice. In this statement we are not going into the defensive side of the evidence. They deny the whole transaction and say they never paid him any money, and Plemons testified in regard to railroad ticket that Barkley came to him, Plemons, and gave him twenty dollars and asked him when at the depot to buy him a ticket to El Paso. That Barkley knew and had heard them talking about the fact that he, Plemons, and his brother-in-law, Thomas, were going to Tucumcari, New Mexico, to sell an automobile, and that they were working on it that particular morning, and Barkley came and asked them to carry him along, which they agreed to do, and he had occasion to go to the depot for some purpose, or at

least went to the depot, and Barkley asked him to buy a ticket for him with the twenty dollars given him by Barkley, which he did and brought him back $3.05. The controversy about the money when they finally separated after leaving Amarillo grew out of the fact that he, Plemons, had loaned the witness Barkley money theretofore, and in paying him this money he wanted Barkley to pay him what he owed. This Barkley declined to do, so he finally gave Barkley the $3.05, and that was the end of the transaction from Plemons' viewpoint. But those are matters it is unnecessary here to discuss. The question here is, the attack on the court's charge because it failed to instruct the jury that this man Barkley was an accomplice. A discussion of the defendant's side of the case is unnecessary to an elucidation of that point, as their testimony was purely exonerative. The court should have charged the jury that Barkley was an accomplice. Also in this connection, the court charged the jury that they could not find the defendants guilty upon Barkley's testimony, "unless you first believe the testimony of the said J. M. Barkley is true, and that it shows, or tends to show, that the defendants, or some one or more of them, is guilty as charged in the indictment; and still you can not convict the defendants, or any of them, unless you further believe that there is other evidence in this case, outside of the testimony of said J. M. Barkley, tending to connect the defendants, or some one or more of them, with the commission of the offense charged in the indictment." There are quite a number of exceptions taken to this charge, which should have been sustained. That portion of the charge given by the court to the effect that Barkley's testimony must tend to show that the defendants are guilty, is in contravention of all the decisions where that question has been adjudicated. For collated cases see Branch's Criminal Law, sec. 320. These have been collated so often in the decisions we deem it unnecessary to do more than refer to the cases as collated by Mr. Branch. The charge is not sufficient when it tells the jury that the evidence of the accomplice must tend or tends to show guilt. The same objection is urged to the general definition of accomplice as well as in the application of the law to the case. The objection to the charge just quoted is where the court is applying the law to the case. In the general definition he uses the same language, that is, that the jury must first believe the accomplice's evidence to be true, and that it shows or tends to show defendant's guilt. That portion of this charge is also criticised which informs the jury that the accomplice's testimony would be sufficient if it shows or tends to show that the defendants, or some one or more of them is guilty as charged. The court nowhere limits the application of the law to the particular defendant who the jury might find guilty under the circumstances indicated. It would seem from the charge as given if the jury should find that the accomplice was corroborated, or there was evidence tending to corroborate him, or that his testimony tended to prove guilt, they could find them all guilty under those circumstances if the jury should come to the conclusion that some one of them was guilty. Applying the law to the case, after giving the general definition of principals and

directing an acquittal as to Thomas, he then instructed the jury that if they should believe beyond a reasonable doubt that the defendants, Frank Engman, Z. Z. Savage and Bluford Plemons, acting together, on or about the third day of April, 1913, unlawfully, wilfully and corruptly offered to bribe the witness J. M. Barkley in the Frank Engman case then pending in that court, to disobey subpoena, they would convict. In charge previously quoted, with reference to accomplice testimony, he instructs them that if they should believe the testimony of the accomplice, and that it connected or tended to connect the defendants with the case, then they might find all of them guilty. It takes no reasoning to show that this charge is clearly erroneous. The court should have pointedly instructed the jury that they could only convict the man as to whom they might find the testimony sufficient, and not to convict all of them unless they found the evidence sufficient as to all of them, and that the accomplice was corroborated as to all of them. This is perhaps a sufficient discussion of the charge on indicated errors. These were pointed out by the defendant not only in exceptions to the charge before it was read to the jury, but in bills of exceptions, and special charges were asked covering these matters, which were refused by the court.

Another special charge was asked with reference to the transaction that Barkley says occurred between himself and appellant Savage at the Elk hotel. In that conversation Barkley testified that Savage offered him money. They had a controversy as to the amount of it, but finally agreed on something like one thousand dollars if he would leave the country. He then went into detail as to how the matter was to be handled, and that he did leave the country and went away, and Savage sent him money. The special charge requested in this connection, which was not given by the court and no similar charge given, is as follows: "The witness John Barkley testified before you in regard to other transactions with some of the defendants and other alleged offers of bribes. Now, in regard to such other and subsequent transactions you are instructed that before you can consider them for any purpose whatever you must first find from the evidence that such transactions took place as testified to by Barkley, and further, that such transactions in themselves constituted also the offense bribery as that term is defined in the court's charge, or at least constituted or were an offer to do away with evidence in this case, and unless you do find from the evidence both that such other alleged transactions are true and also that they constituted such offense, or one of them, you will not consider same for any purpose." They also asked special instructions which were refused and none of similar import given by the court, that before the jury could consider the transactions testified to by Barkley subsequent to the filing of the indictment in this case for any purpose, they should find from the evidence that such transactions actually took place as testified to by Barkley, and further that such transactions in themselves constituted also the offense of bribery or at least constituted an effort to do away with evidence in this case, for the reason, that testimony

of subsequent transactions to an indictment are in no event legal testimony to be considered by the jury unless the jury first finds the testimony to be true and that the transactions actually took place and that same constituted a penal offense, etc. Other portions of the charge also brought to the attention of the court and asked that the jury be instructed with reference to the corroboration of Barkley in reference to subsequent transactions, upon the theory that Barkley being an accomplice, could not corroborate himself not only as to this case but as to subsequent matters that he testified occurring between himself and other parties. We are of the opinion these charges should have been given, or at least the principle involved in them should have been given to the jury fully and fairly. Barkley being an accomplice could not corroborate himself by any inculpatory evidence that he might give in connection with bribery. He was a party to it and organized it from beginning to end under his own testimony, and whatever other conversation occurred with reference to the matter between him and one of the parties after the alleged design, necessarily implicated him as much as it did either of the defendants to whom he may have talked. The jury may have been impressed with the fact that the subsequent statements and conversations were corroborated by reference to the original transaction. Of course, the courts and lawyers would not so understand it, but the jurors are not versed in these matters, and this phase of the case should have been carefully guarded so that the testimony might not be appropriated to an illegal or unlawful purpose.

It is contended the evidence is not sufficient to support the conviction. The writer is disposed to agree with the contention. Barkley made himself a principal in the matter from the beginning. He originated and helped originate and brought about the scheme by which he was to accept the bribe. We are of the opinion that so far as the facts are concerned he was not corroborated by any fact or circumstance of sufficient importance to show that appellant Savage gave him any money to convey him out of the country in the original transaction. Barkley undertook to so testify, but nobody else does, and the testimony shows that he had twenty dollars with which the ticket was bought, and he did not get it from Savage, and so far as the testimony goes no witness shows that Barkley received money from Savage. The writer is not willing to see a man incarcerated in the penitentiary on this character of testimony. That Barkley was an accomplice is shown by his own testimony, and he is not corroborated, so far as I understand the facts, in any manner that would tend to connect appellant with paying him money or running him out of the country.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HARPER, Judge.—I agree to the reversal of the case on account of the error in the charge on accomplice testimony, wherein the court instructed the jury, that if they find that Barkley was an accomplice and

his testimony *tended to show the defendant guilty,* etc.  The other grounds I do not agree to and will write my views later.

November 11, 1914.

HARPER, JUDGE.—The indictment was returned by the grand jury charging appellant, Frank Engman, Bluford Plemons and C. G. Thomas with offering to bribe one J. M. Barkley, who had been summoned to appear as a witness against Frank Engman in a case then pending against him, to leave the State and not appear as a witness against said Engman.  We will not undertake a full statement of the case, as we have concurred in a reversal of the case, but not agreeing to all the holdings of Judge Davidson, we will state our views on such questions.

The record discloses fully that Barkley had been legally and duly summoned as a witness, therefore the failure to introduce the subpoena would not present error.  When this fact was testified to by a number of witnesses, and no evidence offered to the contrary, this fact was sufficiently proven.

The testimony of the witness Barkley as to conversations had between him and defendant Savage at the Elks hotel, we think admissible under all the rules of law.  In the first place, in cross-examination of Barkley, the defendant brought this matter in the record.  The testimony offered by the State in its direct testimony related solely to the offer to bribe as charged in the indictment, the forty-dollar transaction.  On cross-examination of the witness Barkley the defendant, to destroy his credit as a witness, asked Barkley if he had signed Savage's name to two checks.  Barkley admitted that he had done so.  Then the State was permitted to show on redirect examination of the witness how he came to sign Savage's name to these two checks, and the witness testified that after the indictment had been returned charging appellant with the offer to bribe him, that Savage came to his room and offered and agreed to pay him $1000 to leave the State and not appear as a witness against him in this bribery case and other cases pending; that he agreed to accept it, and did leave the State, and in accordance with instructions from Savage had signed appellant's name to these two checks.  This was merely in explanation of why he had signed appellant's name to the checks, and as appellant had elicited that fact, it certainly was permissible for the State to show that he had done so by the instructions of the man whose name he signed to the checks.  But the testimony was admissible for another reason and on another ground.  Savage had been indicted for an alleged attempt to bribe Barkley.  This testimony was in reference to the offer of $1000 to leave the State and not testify against him in the bribery case then pending—this case of which he was convicted.  It has always been held admissible to show the flight of the person charged with crime, or a tampering with the witnesses for the State by him as a circumstance tending to show his guilt.  As said by Mr. Branch in his work on Criminal Law: "If defendant authorized or was present when money was offered or paid a witness to leave, or

himself attempted to or did tamper with the witness, it is not error to admit proof of such fact." Branch's Criminal Law, sec. 862; Clark v. State, 43 S. W. Rep., 522; Ezell v. State, 71 S. W. Rep., 283; Booth v. State, 52 Texas Crim. Rep., 452; Parks v. State, 46 Texas Crim. Rep., 100; Wharton's Crim. Ev., sec. 923, 10th ed.

The record discloses that C. G. Thomas was charged with the others as a principal. He had appeared before the grand jury and made a voluntary statement. This was reduced to writing and signed by him. All four defendants elected to be tried at the same time—no severance being requested or demanded,—and all four were not only jointly indicted but jointly tried. In making its case, the State introduced this voluntary statement of Thomas as evidence tending to show his, Thomas', guilt—the court stating at the time that it was admitted only as evidence against Thomas, and instructed the jury that it could not be considered as any evidence against the other three defendants. Under all the authorities this evidence was clearly admissible against Thomas, who was on trial. At the close of the testimony the court did not deem the evidence sufficient to authorize the conviction of Thomas, and withdrew this statement made by Thomas, and instructed the jury it could not be considered for any purpose. We do not think the record discloses that the district attorney was guilty of improper conduct in the premises. Certainly there is no evidence that he acted in bad faith. Throughout the trial his efforts seem to have been in earnest in an effort to adduce evidence to convict all four defendants, Thomas as well as the others, and if, in the opinion of the trial judge, at the close of the testimony, the testimony did not authorize the conviction of Thomas, it does not show or tend to show improper conduct on the part of those prosecuting officers. It shows only a difference of opinion as to the strength of the testimony adduced on the trial. Thomas being on trial at the time it was offered, and the testimony, with the other evidence, having a tendency to show his guilt, there was no error in admitting it at the time it was admitted, limited as it was by the court.

The opinion of Judge Davidson also holds that the court erred in submitting to the jury the question of whether or not Barkley was an accomplice—that he should have peremptorily instructed them that Barkley was an accomplice. In this I do not concur. By this record it is a question of whether or not Barkley is in law an accomplice in so far as the forty-dollar transaction is concerned, on which he was being prosecuted in this case. According to this testimony, he was approached by the defendants and offered forty dollars to leave and not testify against Engman in cases then pending against Engman. That this forty dollars was put up by Savage and thirty dollars thereof paid to him by Plemons. He says that when he was approached with the proposition by the defendants he reported the matter to the county attorney and the sheriff; that they instructed him to accept the money, and agree to leave, and then to bring the money to them. He says he did at once report the matter to the sheriff and county attorney, delivered the money to them, and the defendants were at once arrested by

the sheriff; that he had no idea of leaving or accepting the money, but only took it at the instigation of the officers. If this is true, this did not make him an accomplice in law. This question is discussed by Judge Davidson in Bush v. State, 68 Texas Crim. Rep., 299, 151 S. W. Rep., 554, and the true line of demarcation is there marked out—if one originates the crime or is instrumental in its initiation, even though a detective or other officer, he would be an accomplice; if, however, he is approached, and all his steps are taken with a view of detecting crime, he is not an accomplice to such crime, and we can agree to no other rule. This question was fully discussed in Minter v. State, 70 Texas Crim. Rep., 634, 159 S. W. Rep., 286, and Holmes v. State, 70 Texas Crim. Rep., 214, 156 S. W. Rep., 1172, and authorities collated, and to which we here refer. Defendants in their testimony do not say they were solicited by Barkley to offer a bribe, but they deny all knowledge of the matter, and certainly Barkley's testimony and the other testimony does not do more than raise the question that he may have been an accomplice, which question it was proper to submit to the jury for their determination, and this the court did.

Neither do we think the charge of the court is subject to the criticism that if they should believe one guilty they must find all the defendants guilty. The court instructed the jury: "Where several defendants are tried together, as in this case, the jury may convict such of the defendants as they may believe from the evidence beyond a reasonable doubt are guilty and acquit the others." The jury in their verdict show they so understood the law, for their verdict is: "We, the jury, find the defendants Bluford Plemon, Frank Engman and C. G. Thomas not guilty, and find the defendant Z. Z. Savage guilty as charged in the indictment and assess his punishment at confinement in the penitentiary for two years." This shows they were not misled; that the court's charge was clear and explicit enough to let them understand the law in this particular, and certainly such criticism of the charge is not and can not be justified when only one out of four defendants is convicted.

Neither do we think any charge was called for as to the transaction at the Elks hotel. This was as to an attempt to bribe Barkley to leave the State and not testify against these defendants in this case, and as such testimony was admissible, as would be testimony of flight or any other circumstance of tampering with a witness on the issue of guilt, it would have been improper to have sought to limit it in the charge, and such a charge would have been upon the weight of the testimony. The authorities on this question have heretofore herein been cited. Neither was corroboration necessary as to the testimony of subsequent transactions to the one on trial, showing a tampering with or offer to bribe a witness not to appear and testify on the trial of this case.

I do not agree that the testimony does not support the conviction, if there was no error in the trial. As it will be tried again, I will not comment on it, but if the testimony offered by the State is true, it shows a deliberate effort to bribe Barkley not to appear and testify

against Engman in any case then pending against him; a payment of thirty dollars for that purpose, and the corroborating circumstances are sufficient to sustain a conviction.

These are all the questions discussed by Judge Davidson except the one in which I concur in the opinion that it shows error. I have not discussed the above questions at any great length; but just desired to enter my protest to any such holdings and ruling of law. As to the ground, and the only ground, upon which I concur in the reversal of the case, it is in the charge on accomplice testimony. The court instructed the jury in this paragraph that if they believed Barkley was an accomplice and his testimony "tended to connect the defendants with the commission of the offense." This was error, and it has been so often so held and pointed out, that it seems strange to us that this error should continue to creep into the record. Appellant in his objection specifically pointed out this error in the charge, and it should have been corrected. In the cases of Oates v. State, 51 Texas Crim. Rep., 449; Barrett v. State, 55 Texas Crim. Rep., 182; Tate v. State, 55 Texas Crim. Rep., 397; Maples v. State, 56 Texas Crim. Rep., 99, and other cases cited in Branch's Criminal Law, section 320, where the rule is stated to be that "a charge is error which only requires testimony of an accomplice to 'tend' to connect the defendant with the offense. The charge on accomplice must require that the testimony of the accomplice 'connects' the person on trial with the offense charged, not merely 'tend to connect.'" As to the corroborating testimony, this only need "tend to connect" the person on trial with the offense, but the accomplice testimony must show that the defendant was connected with the transaction. We trust this distinction will be understood in the future.

For this error in the charge we agree to a reversal of the case.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—I concur in Judge Harper's opinion.