1. CRIMINAL LAW ⟐⟐981(2)—INQUIRY AS TO INSANITY AFTER TRIAL.

If it be claimed that defendant's mind is of such a character as to render him legally insane, the matter can be inquired into after as well as before trial for a criminal offense, and, on adjudication of the question in a lunacy proceeding, defendant can be sent to an institution for the insane, and not to the penitentiary.

2. CRIMINAL LAW ⟐⟐1064(1)—MOTION FOR NEW TRIAL NOT CALLING FOR CONSIDERATION.

The Court of Criminal Appeals cannot consider a motion for new trial, not signed or sworn to, nor stating its facts in such a way as to make their truth a question to be considered, either by the trial court or the Court of Criminal Appeals.

Appeal from District Court, Smith County; J. R. Warren, Judge.

June Hunter was convicted of violation of the local option law, and he appeals. Affirmed.

Alvin M. Owsley, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted in the district court of Smith county for the violation of the local option law, and given a penalty of five years in the penitentiary. There is no statement of facts, and no exceptions appear in the record, either to the evidence or to the charge of the court; but appellant raises one question in his motion for a new trial which we will notice.

[1] Appellant was tried on April 28, 1919, and his amended motion for a new trial was filed on May 7, 1919, appended to which motion were four affidavits of parties, substantially stating that appellant was of weak mind and easily influenced, and one of said affidavits raises the question of whether or not appellant had sufficient intelligence to know the difference between right and wrong. If it be claimed that appellant's mind is of such character as to render him legally insane, such matter could be inquired into after, as well as before trial, and, upon an adjudication of such question in a lunacy proceeding, appellant could be sent to an institution for the insane, and not to the penitentiary. We make this observation, stating, however, that the matter is not presented in the record in such way as to show any error in the action of the trial court in overruling the motion for a new trial.

[2] There are other facts stated in the motion for a new trial which we cannot consider. Said motion was not signed or sworn to, nor the facts therein stated in such a way as would make their truth a question to be considered, either by the trial court or this court. No reason or excuse is shown why there is no statement of facts in the record.

The indictment and charge of the court are sufficient and, no error appearing, the judgment of the trial court is affirmed.

---

(86 Tex. Cr. R. 366)

McCORMICK v. STATE. (No. 5512.)

(Court of Criminal Appeals of Texas. Dec. 10, 1919.)

1. CRIMINAL LAW ⟐⟐878(2)—GENERAL VERDICT PROPERLY APPLIED TO COUNT CHARGING THEFT.

Where indictment was in two counts, one charging theft, and the other receiving and concealing the property, and a general verdict of guilty was returned, the trial court properly applied the verdict to the count charging theft, and rendered judgment accordingly.

2. CRIMINAL LAW ⟐⟐780(2)—EVIDENCE JUSTIFIED INSTRUCTION ON ACCOMPLICE'S TESTIMONY.

In a prosecution for theft, held that, defendant was entitled to have given an instruction submitting the issue of whether state's witness was an accomplice.

3. CRIMINAL LAW ⟐⟐814(2)—ISSUE RAISED BY EVIDENCE SHOULD BE SUBMITTED.

Where there is any evidence raising an issue, it becomes the duty of the trial court to submit the issue.

4. CRIMINAL LAW ⟐⟐743—TRUTH OF DEFENDANT'S TESTIMONY FOR JURY.

Whether the evidence of the accused be true or false is a question for the jury under proper instructions.

5. CRIMINAL LAW ⟐⟐780(2)—JUSTIFICATION FOR REFUSAL OF REQUEST TO SUBMIT ISSUE.

That defendant in his alleged confession, which was introduced by the state, contradicted his testimony as a witness on the trial, could only affect his credibility as a witness, or his guilt, and in no wise justified ignoring the right of the jury to pass on the question of accomplice's testimony, by refusing requested instruction relating thereto.

6. CRIMINAL LAW ⟐⟐829(1)—REFUSAL OF INSTRUCTION COVERED BY MAIN CHARGE.

There was no error in refusing special requested charges, where point raised was covered by the main charge.

---

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

7. CRIMINAL LAW ⬚⇒982—REQUEST FOR SUSPENDED SENTENCE PUT REPUTATION IN ISSUE.

Defendant, being prosecuted for theft, by asking for a suspended sentence, put his reputation in issue, and there was no error in allowing the state to prove that he had been convicted for playing poker.

Appeal from Criminal District Court, Tarrant County; George E. Hosey, Judge.

Tench McCormick was convicted of theft, and appeals. Reversed and remanded.

Mays & Mays, of Ft. Worth, for appellant.
Jesse M. Brown, Criminal Dist. Atty., of Ft. Worth, W. E. Myres, Asst. Criminal Dist. Atty., of Cleburne, C. M. Cureton, Atty. Gen., and John Maxwell, Asst. Atty. Gen., for the State.

LATTIMORE, J. [1] The indictment against appellant contains two counts, one charging appellant with theft, and the other with receiving and concealing the same property alleged to have been stolen in the first count. A general verdict of guilty was returned by the jury, and the trial court applied said verdict to the count charging theft, and rendered judgment accordingly. This was correct, and such action has often been upheld by this court.

[2] Appellant asked a special charge, in due form and manner submitting to the jury the question as to whether or not the state's witness Harwell was an accomplice; said charge being refused, and such action of the court assigned as error. We think this contention must be upheld. Appellant testified in his own behalf, denying the theft of the alleged stolen property, or any guilty connection with the taking of the same, and furthed testified that on the night the property was taken he was at home; that he got his first information relative to the whereabouts of the alleged stolen property from the witness Harwell, said information being received by him the night before he was arrested. He states that Harwell—

"came over and called me out, and told me that he was going to Dallas early the next morning, * * * and said something about wanting some casings brought down to the gin the next morning; told me he wanted me to help him put some casings on his car. * * * The next time I saw this fellow Bud Harwell, after he came to my house that night, was the next morning just before daylight. He did not come into the house; he came to the porch and called me out, and he came to the little room. There is a little room or hall on the porch, and I was in there. I did not have my pants on. He told me there that he had some stuff down there, and he wanted me to bring it to the gin; that he wanted to go to Dallas. I did not have any idea it was stolen stuff at that time. He said he would give me 50 cents for bringing it down there. I took the stuff to the gin. He was there when I got there. He was in his car. I delivered the stuff to him. He gave me a check after I delivered the stuff to him. * * * I turned this stuff over to him when he gave me this check, and went back to the house."

On cross-examination, in answer to the state's question, "Who turned over the automobile tires and tubes to you?" appellant answered:

"Fred Harwell told me about where I would find them. He told me that I would find them over about an old well right at the garage. I found them right there at the well. Part of them was stuck down in the well. He told me that morning where I would find them, on the morning he came to my house, the morning that Le Gett arrested me; and he wanted me to go and get them, and deliver them at the gin for him."

[3, 4] The state's contention, supported by their proof, was that Harwell was acting for and in behalf of the owner, and with the officers, and aiding to recover the alleged stolen property, and find out and catch the thief. Their contention is abundantly upheld by the evidence, and may be true; but that is a question for the decision of the jury, and not the trial court. When there is any evidence raising an issue, it becomes the duty of the trial court to submit the same to the jury, and in this case it is beyond question that, if appellant's testimony be true, the witness Harwell would certainly be an accomplice. Whether the evidence of appellant be true or false, under our practice it is a question for the jury, under proper instructions. The state contends that the evidence does not raise the question of accomplice testimony, and cites the case of Dever v. State, 37 Tex. Cr. R. 396, 30 S. W. 1071, the case of Steele v. State, 19 Tex. App. 425, and the case of Bush v. State, 68 Tex. Cr. R. 299, 151 S. W. 556. As we understand those cases, they hold directly contrary to the state's contention.

[5] It is entirely immaterial to a decision of this question that appellant, in his alleged confession, which was introduced by the state, contradicted his testimony as a witness on the trial. This could only affect his credibility as a witness or his guilt, and in no wise justified ignoring the right of the jury to pass on the question of accomplice testimony. The substance of the requested charge on that theory should have been given.

[6] The court below did not err in refusing the other special charge requested; the point there raised being covered by the main charge.

[7] No error was committed by allowing the state to prove that appellant had been convicted for playing poker. He asked for a suspended sentence, and thereby put in is-

sue his general reputation, as affecting which evidence of convictions for offenses not involving moral turpitude is admissible. Williams v. State, 74 Tex. Cr. R. 289, 167 S. W. 3o0.

For the error indicated, the judgment of the trial court is reversed, and the cause remanded.