[Crim. No. 3919. Second Dist., Div. Two. Dec. 5, 1945.]

THE PEOPLE, Respondent, v. JAMES C. ODOM, Appellant.

Maurice A. Gleason for Appellant.

Robert W. Kenny, Attorney General, and Carl S. Kegley, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of murder in the second degree after trial before a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial.

The evidence being viewed in the light most favorable to the People (respondent), and pursuant to the rules set forth in *People* v. *Newland,* 15 Cal.2d 678, 680 [104 P.2d 778], and *People* v. *Pianezzi,* 42 Cal.App.2d 265, 269 [108 P.2d 732], the essential facts are:

On December 24, 1944, defendant struck and beat Matilda Williams so severely that she received injuries from which she died.

Defendant relies for reversal of the judgment on two propositions which will be stated and answered hereunder seriatim:

■ First: *There was not any substantial evidence to sustain the verdict of the jury.*

This proposition is untenable and is governed by the evidence hereinafter related and the rule of law that if circumstantial evidence reasonably justifies the finding of the trier of fact an opinion of the reviewing court that those circumstances might also be reasonably reconciled with the innocence of the defendant will not warrant interference with the determination of the trier of fact. (*People* v. *Newland, supra.*)

In the present case the evidence discloses that defendant had resided at 1573 East 41st Place, Los Angeles for two years with Matilda Williams, the deceased. About two or three a.m., December 24, 1944, Mr. Warr, who lived in the house next to defendant's residence, heard a noise which he recognized as that of defendant arguing and fighting with certain other persons. About twenty or thirty minutes after hearing the first noise he heard a woman "scream and holler" and the following morning he noticed "a pretty good spot of" blood on the sidewalk near defendant's residence. The same afternoon defendant came to Mr. Warr's house and asked him and his wife to come to his home. When the Warrs entered defendant's house, Matilda Williams was lying in bed with her hands lying across one another. Mrs. Warr endeavored to take the deceased's pulse and finding none told defendant Matilda Williams was dead. The deceased had a scar under her left eye and dried blood around her nose. At defendant's request the police were called. Mrs. Warr further testified that she was also awakened on the morning of December 24, 1944, at about the same time that her husband had been and that she heard a scuffling in the driveway between her home and defendant's, and heard the defendant say, "I am going to get rid of the rest of you four-eyed bitches." She in

other respects corroborated the testimony given by her husband.

Police Officer Todd testified that about 5:15 p.m. December 24, 1944, he went to defendant's home and saw the deceased lying on a bed; that there was a red seam, appearing to be blood, on the south wall about in line with the foot of the bed and 12 inches from the floor, which ran in a westerly direction and appeared as if it had been "smeared on the wall"; that he noticed bruises on both eyes and on the forehead just above the left eye of the deceased.

From the foregoing testimony, pursuant to the rule of law set forth above, the jury was justified in finding that death came to the deceased as a result of a beating administered by defendant. It would serve no useful purpose to discuss the testimony of defendant in which he denied having struck the deceased.

 Second: *The trial court erred in permitting Dr. Homer R. Keyes to testify as follows:*

"*Q. Doctor, this extent of the injury that you found in the liver couldn't be made by the end of this bed that counsel showed you? A. My opinion is based on—well, I have an opinion. It was more severe, probably more severe than you would expect from a fall on an outstanding object. . . .*

"*Q. Do you think that, in your opinion, Doctor, if this woman were standing next to this bed and she fell, she could have received the injuries to her liver as you have described here in the record? A. It seems unlikely that the body could develop such amount of momentum in the distance from a person of her height to the top of that bed, to fall with such force as to cause all the damage that I found. Of course it is speculation, but I don't think so.*"

We will not consider this proposition for the reason that the law is established in California that an objection to the introduction of evidence may not be made for the first time on appeal. (10 Cal.Jur. [1923] page 824, § 111; *Hurd* v. *Walker,* 9 Cal.App.2d 525, 527 [50 P.2d 1074].) In the present case the testimony which it is urged the trial judge should not have received was admitted in the trial court without objection, and under the rule just stated any objection which might have been made to such testimony was waived.

For the foregoing reasons the judgment and the order denying defendant's motion for a new trial are affirmed.

Moore, P. J., and Fox, J. pro tem., concurred.