## Jim Smith v. The State.

### No. 981.     Decided February 22, 1911.

**1.—Local Option—Jury and Jury Law.**

Where, upon trial of a violation of the local option law, it appeared from the record on appeal that the jurors who tried appellant had tried several other cases involving a violation of the local option law, in which they had rendered verdicts of guilty upon the testimony of the same witness who testified against the defendant, and whose credibility was strongly questioned, and that the jurors had passed upon the credibility of said witness and the weight to be given to his testimony in the defendant's case, the conviction resting solely upon such testimony, and the defendant at the proper time objected to said jurors and requested that another jury be selected, there was reversible error.

**2.—Same—Practice in the County Court—Court Officers.**

See opinion for remarks of court on the conduct of prosecuting attorney and sheriff in selecting the jury and conducting prosecution.

**3.—Same—Evidence—Detective—Prosecution.**

See opinion for remarks by the court in the conduct of officers in hiring detectives and inducing parties to violate the law, deprecating such practice.

**4.—Same—Absence of Defendant—Charge of the Court.**

Where, upon trial of a violation of the local option law, it appeared from the record on appeal that the entire charge of the court was read to the jury

during the absence of the defendant, except the last paragraph thereof, and the defendant did not personally waive his absence even after the defendant was brought into court, but his counsel waived the re-reading of such charge, the same was reversible error.

Appeal from the District Court of Shelby. Tried below before the Hon. Jas. I. Perkins.

Appeal from a conviction of a violation of the local option law; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the local option law under the felony statute, and given one year in the penitentiary.

1. The State's conviction was secured practically, if not almost entirely, upon the testimony of Charley Jordan. Jordan testified that he was in the courthouse yard at Center and saw appellant, and had a conversation with him. He expressed a desire to appellant to secure whisky, and finally induced appellant to take some money with which to secure the witness some whisky. Appellant received the money and went away, and came back with a pint of alcohol mixed with water. He said, however, that he did not give the money directly to appellant, but gave it to John Polley, and told him to give it to appellant. Sale was denied by appellant, and evidence introduced to sustain his theory of the case. The State's witness Jordan was contradicted and impeached. Some of this went to show that Jordan stated he did not buy whisky from appellant, and that appellant was not guilty. Evidence was also introduced to show that appellant got the whisky or the alcohol from Harris, and paid him the money for it as an accommodation to Jordan. Harris was indicted also for violating the local option law, and the evidence shows that after these indictments were found Harris induced appellant to take back the money, appellant's contention being that this was the money he paid Harris for the whisky that he bought for Jordan. Harris' theory was that he had borrowed this money from appellant with which to pay the express charges on some alcohol that he had a day or two before received by express from Beaumont.

When the case was called for trial appellant moved to set aside the jury and requested that another jury be selected with which to try him. Without going into a detailed statement of these matters, in brief, it is shown by the bill of exceptions that the jurors who tried appellant had tried several other cases in which they had rendered verdicts of guilty. Jordan was the State's witness and the alleged purchaser in each instance, and upon his testimony each con-

viction was secured. Appellant insisted that inasmuch as the State's case rested upon the witness Jordan, and his testimony would be attacked, and had been attacked in the other cases, that the jurors had already in four or five preceding convictions passed upon the credibility and the weight of the evidence of Jordan and believed his testimony to the extent of convicting each party so accused. In this connection it may be well to state another fact. The bill of exceptions shows that the witness Jordan had entered into a contract with the sheriff for the sum of one hundred dollars to come to Shelby County and "work up" local option cases, and that he had been rather diligent in the matter of inducing parties to sell him whisky. Jordan lived in Gregg County and had been indicted there for forgery.

The court charged the jury in this connection that the main question for them to decide was whether appellant sold the whisky to Jordan. Under these circumstances appellant urged a motion to set aside the jury that was present, and requested that another jury be selected. We are of opinion this motion should have been sustained. In Obenchain v. State, 35 Texas Crim. Rep., 490, it was held that where the same prosecution was involved and the jury had passed upon the same facts in another case, that they would be disqualified to sit in a case upon motion made to set them aside.

In the case of Green v. State, 53 Texas Crim. Rep., 473, it was held that where the prosecution rested upon substantially the same facts, which had been definitely affirmed by the same jurymen in other cases, and which came from the same witness, and the only difference consisted in the names of the defendants, the jury was not an impartial one, and the verdict of conviction could not be sustained. In the latter case it was shown by the qualification of the judge that the jurors, upon their voir dire examination, stated they had formed no conclusion as to the guilt or innocence of the defendant and that they were neither biased nor prejudiced for or against him, and that whatever testimony had been developed in any other case would not in the least influence them in arriving at a verdict in defendant's case. And the court further stated that he knew these men to be good citizens and believed them to be fair and impartial men. This court in passing upon this said: "That they were good citizens and good men we should not hesitate to accept the assurance of the learned judge; but in a case where the transaction was the same kind and in the same place, and where the jury had in a former case affirmed their belief of the credibility of the prosecuting witness by their solemn verdict, it is not believed, however good and true they may be, that they are of that impartial quality that the law provides that every defendant may submit his case to and leave the determination of his rights with." In Holmes v. State, 52 Texas Crim. Rep., 353, Judge Brooks, speaking for the court, says: "We can not believe that this jury could sit and listen to the trial of a

local option case against appellant with practically the same testimony in another case, and not have an opinion previously formed, which opinion would influence their action in finding a verdict. If they believed appellant guilty in the first instance, there is no rational basis for concluding that they would not believe him guilty in the second instance. If the witness swore appellant sold him whisky once, and they believed that fact, we know of no process of reasoning by which they could discard the fact and disbelieve the statement when the witness swore appellant sold him (witness) whisky the second time." Further quoting from the Green's case, this language is found: "We do not think that the fact that other persons than appellant were involved in the other prosecution can make any difference. The substance of the objection was that having, in a prosecution resting upon substantially the same facts, once definitely affirmed their belief in the credibility of the prosecuting witness, that this opinion of necessity, must and would operate in a case against this defendant, based upon the testimony of the same witness, where, except the mere names of the defendant, the evidence was the same; and that it would be an injustice to the defendant to be compelled to submit his cause to a jury with such deliberate and fixed convictions and opinions as to the credibility of the witness upon whose testimony a conviction was sought. The right of trial by jury is an important right. It is indispensable to the due administration of law that an impartial jury should in every case be provided. Unless an unbiased jury is guaranteed to the citizen, then indeed is a trial by jury as 'idle as a painted ship on a painted ocean,' a hollow mockery and a vain delusion." See also Hanes v. State, 107 S. W. Rep., 818; Gilmore v. State, 37 Texas Crim. Rep., 81.

We are of opinion under these authorities the court erred in not setting aside the jury and giving appellant another jury before whom to try the case who had not passed upon the credibility of the witness Jordan favorably in similar cases. We do not see how under those circumstances, especially viewed in the light of the testimony and the verdict, that the jury which tried appellant could have been impartial.

2. Another bill of exceptions recites that when the case was called for trial the district attorney retired to challenge the number of jurors allotted to the State for such purpose, and had the sheriff who had summoned these jurors to go with and assist him in this matter, and that the sheriff did so, and that he assisted the district attorney in selecting all of the jurors in the trial of all the cases tried for the week wherein the witness Jordan was a detective witness for the State, which cases were four in number. After the jury had been completed the district attorney had the sheriff sit by him during the trial and in ten feet of the jury that was trying appellant; that the sheriff would prompt the district attorney and suggest questions to him to ask the witnesses; that the sheriff and district attorney would

consult together and exchange ideas during the trial of the case in view and hearing of the jury; when the district attorney would retire to consult with his witnesses he would have the sheriff retire with him in the presence of the jury, and the jury could see them talking together to the State's witnesses. To all of this appellant objected for various reasons, and, among others, recites the fact that the State's only witness Jordan had been employed as a detective in local option matters; had been employed by the sheriff and paid one hundred dollars by him for that purpose; that the sheriff had taken a great deal of interest in this case, and the other cases, and that the facts in the other cases were the same as developed in the case at bar, all showing that the defendants were alleged to have sold intoxicating liquors to Jordan. It is recited that the defendant was a negro; the detective Jordan a white man, and the sheriff a highly respected white man and popular officer, and one of the most influential men in the county, and by reason of his great popularity as sheriff of the county, and whose popularity can be seen by the fact that in the election wherein he was elected sheriff he defeated his opponent by a majority of over 1600 votes out of a voting population of 3500, and by reason of his great popularity and the great weight he has over the people of the county he prejudiced the minds of the jury against the defendant in the manner as indicated.

Just how far the prosecuting attorney may call upon a sheriff to assist him in the selection of jurors, or assisting him in the case, is not necessary here to determine. In regard to this phase of the bill we desire to say the State's case was made by the hired detective who worked up cases, and in this case developed the fact that he had induced the appellant to secure the whisky for him with a view and for the purpose of instituting this very prosecution. In every case Jordan had induced the violation of law to which he testified. This manner of instituting prosecutions against the citizenship of the State and inducing them to commit crime is to be deplored. While it is eminently proper that officers should be diligent in ferreting out crime and violations of the law, yet it does not occur to us that the theory of our law is predicated upon the idea that parties should be induced to violate the law in order that a prosecution may be brought about. The machinery of the State should be put into operation to detect and punish crime, but not to organize and institute it. The prevention of crime is one of the main purposes of our law, not its encouragement or propagation.

3. There is another bill of exceptions in the record which recites that when the court read his charge to the jury the defendant was absent, being confined in the county jail at the time; that the entire charge was read to the jury during the absence of the defendant with the exception of the last paragraph, which read as follows: "If you find the defendant guilty the form of your verdict will be: 'We, the jury, find the defendant, Jim Smith, guilty as charged in the indict-

ment and assess his punishment at confinement in the penitentiary for —— years,' filling the blank with the term you assess under the above instructions as to the penalty."

That after the court had read all the charge, and was reading the paragraph above quoted, the district attorney said: "Your Honor, I see that the defendant is not in court." The court replied, "Mr. Sheriff, where is the defendant? It is your duty to have him in the court room." And the sheriff said, "He is in jail; I will bring him up forthwith." After the sheriff had gone to the jail and brought the defendant into court, counsel for appellant excepted to the court reading his charge in the defendant's absence and reserved a bill of exceptions. The court, after having the defendant brought into court, asked counsel for defendant if he would require the court to reread the charge to the jury. Counsel replied, "Your Honor, I have reserved my bill of exceptions to the court's action in reading the charge in the defendant's absence and while he was confined in the county jail, but I do not believe the rereading of the charge would cure the error, but I am willing to waive the rereading of the charge." The defendant made no statement whatever, but the statements were made by the defendant's counsel. The charge was not reread by the court or anyone else after the defendant was brought into court. Various objections were urged to this. The court qualified the bill to the effect that the charge was read to the jury immediately after the reconvening of court after the noon recess, and that the court was not aware of defendant's absence until his attention was called to that fact. He then discontinued reading the charge until defendant was brought in as set out more fully in the bill. "I then addressed defendant and his counsel, or his counsel, in his presence, and the colloquy occurred substantially as set out in the bill, the effect of it being that defendant expressly waived the rereading of so much of the charge as had been read and relied solely upon the fact that the charge, or part of it, had been read in the defendant's absence, claiming that this was an error that could not be cured by rereading the charge to the jury, and this is the point saved as I understand the bill." The bill of exceptions as qualified by the judge leaves the fact patent that the charge was read in the absence of the defendant except the clause above quoted, and that after appellant was brought into court his counsel made the remarks quoted, but it is shown in the bill that defendant said not a word. The judge deduces from what occurred and states that the defendant waived this. That the defendant did not waive this is made patent by the judge's qualification. Appellant was not present when the charge was read; he did not open his mouth, but remained silent. It has been provided by the Code of Criminal Procedure that in all prosecutions for felony the defendant must be personally present on the trial. Code of Criminal Procedure, article 633. It has been held in numerous decisions—even an unbroken line—that it is improper

practice to take any step or have any proceeding in the case, however trivial, formal or unimportant it may appear to be when defendant is not present, and it is material error and will render the proceeding absolutely void where such proceeding is had during the trial of the case in the absence of the jury. It has been also held that the accused shall not only be within the walls of the courthouse, but he shall be present when the trial is conducted that he may see and be seen, hear and be heard under such regulation as the law has established. The court can not alter his charge to the jury in the absence of and without the knowledge and consent of the defendant. This has been enacted by statute, article 736, Code of Criminal Procedure. On appeal it has been held that if the record shows affirmatively that appellant's motion for new trial was made in his absence and he subsequently objected, the conviction will be set aside. It has been held if any fact is established requiring or necessitating the discharge of a jury before a verdict on account of the sickness of one of the jury-men, defendant must be present, and it is beyond legal authority of the trial court to determine the sickness of a juror as cause for the discharge of a jury in the absence of defendant. He must be present when the jury is selected and when the verdict is received. For collation of authorities see White's Annotated Code of Criminal Procedure, sections 695, 875, 876, 877, 878 and 879. It is statutory, article 734 of the Code of Criminal Procedure, if the jury after their retirement shall ask for special instructions, that the defendant shall be present and by article 736 of the Code of Criminal Procedure it is so expressly enacted.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*