PAUL ROWLAND JONES V. THE STATE.

No. 23837. Delivered January 28, 1948.
Rehearing Denied March 31, 1948.

520

*Mays* and *Mays* and *Dave Miller*, all of Fort Worth, for appellant.

*Will R. Wilson, Jr.,* District Attorney, *Joe McCasland,* Assistant District Attorney, both of Dallas, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The conviction was for offering a bribe to Steve Guthrie, the Sheriff of Dallas County, with a penalty of three years in the state penitentiary.

The very lengthy statement of facts in this case is composed of the regular transcript of testimony received from the witness box together with a motion picture film and forty-two phonograph records, the latter of which were also transcribed and presented in writing. We note, however, that neither the motion picture films nor the phonograph records were offered in evidence. The appellant accedes to this view, as stated on page 7 of his brief, in the following language: "That neither the records nor the picture film were offered in evidence as exhibits nor marked as such." The questions regarding them will not, for that reason, be discussed.

Guthrie had been elected sheriff at the general election in Dallas County on November 5, 1946. The offense is alleged to have been committed on the 7th day of November, thereafter. Guthrie did not take office under the law until the 1st day of January, 1947. The prosecution is under Article 158, Vernon's Ann. P. C.

As leading up to the commission of the offense, the State was permitted to prove various acts and declarations of the defendant, of George Butler, a city detective, of Steve Guthrie, and others, long prior to the general election. The votes cast at the election were canvassed by the commissioners court on the 14th day of November, 1946. The results thereof were declared and certificate of election issued to Steve Guthrie on November 21st, following. It is the contention of the defendant that under the foregoing state of facts Steve Guthrie was, on the date alleged in the indictment, merely an individual, and continued to be such until the first day of January following; that he was neither a de jure officer nor a de facto officer. He further contends that there is no such officer as a "sheriff-elect" and, therefore, prosecution could not be had under the foregoing Article of the Statute. Based on these contentions, together with numerous others, the defendant filed and presented his motion to quash the indictment. This was overruled.

When the case came on for trial, on the 7th day of April, 1947, Steve Guthrie was the sheriff and the officers serving the court were his deputies. It appears from the testimony that during the negotiations leading up to and at the time of the offer of the bribe, Steve Guthrie, with the aid and assistance of the Department of Public Safety in Austin, had wired his house where the offer was made so as to receive and record the conversations, by making the records for a phonograph herein above described. All of such conversation related to the transaction, or to social events. When the evidence was offered this fact was revealed and, at the conclusion of the oral testimony on the subject, the prosecution offered to appellant's counsel these records with the privilege of playing them to the jury, if he so desired. Appellant's brief says: (page 6) "The State tendered to the defendant, or rather his counsel, said records in open Court, stating that they would have a right to play them as they so desired. The defendant promptly tendered the same back to the State and challenged them to play them word by word, the defendant being ignorant of the fact that a large portion thereof could not be heard by the jury."

If a distinction is to be made between offering an instrument in evidence and reading it to the jury, this is a good illustration. The above quoted paragraph concedes that they were not offered in evidence, and any further discussion of them may be thereby pretermitted.

Summarizing the matters at issue, appellant contends that the court should have sustained the motion to quash; that he should have appointed a disinterested officer to wait upon the court and to take charge of the jury, and perform any duties devolving upon such sheriff; that the court should have submitted appellant's special requested charges (to be hereinafter considered) ; that the court should have corrected his charge to the jury in accordance with the objections and exceptions leveled at the same; that defendant was deprived of a statement of facts (this pertains only to the records and motion picture film, and will have no further consideration) ; it is further contended that the evidence is insufficient to sustain the conviction.

The appellant is chiefly concerned with repeated statements and lengthy discussions regarding the language of Article 158 of the Penal Code, which reads as follows: "Whoever shall bribe or offer to bribe any executive, legislative or judicial officer after his election or appointment, and either before or after he shall have been qualified or entered upon the duties of his office,

with intent to influence his act, vote, option, decision or judgment on any matter, question, cause or proceeding which may be then pending or may thereafter by law be brought before such officer in his official capacity, or do any other act or omit to do any other act in violation of his duty as an officer, shall be confined in the penitentiary not less than two nor more than five years."

This is contrasted with and interpreted further by reason of the passage, by the same legislature which enacted it, of the present Article 173 of the Penal Code, reading as follows: "Whoever shall bribe, or offer to bribe, a sheriff or any other peace officer to do or to omit to do any other act not heretofore enumerated in violation of his duty as an officer, shall be confined in the penitentiary not less than two nor more than five years."

The basis of the argument in favor of their motion to quash is arrived at by application of the doctrine of ejusdem generis, that is, that when the legislature defined what is meant by "legislative, executive or judicial officers," in Article 158, it added a long list of such officers and then finally the general words, "* * * and all other city, county and state officials." He contends that the last quoted phrase relates only to that class which had been enumerated, and did not add sheriffs and other peace officers to the list enumerated. The quoted Article 173 is given in support of that contention.

Our government is divided into three branches, and only three—the executive, the legislative and the judicial. All officials provided for in the constitution must come under one class or another. The sheriff and other peace officers are not engaged in making law, they are not engaged in the interpretation of the law, but in the enforcement of law. They are, therefore, of the executive department, and are included in the general statement in the statute irrespective of and independent from the quoted clause. We do not consider that the doctrine of ejusdem generis has application, but even so, it would include the sheriff and all other county and state officers. They each belong to one of the three branches.

The next question which arises in the brief is whether or not a party may be prosecuted for offering a bribe to one before he becomes the enumerated officer. The articles of the statute specifically says so. The case of Davis v. State, 158 S. W. 288, passes upon the inclusiveness of the general terms and is authority for the expression herein above, that "* * * 'executive,

legislative, or judicial officer' are used in their broadest sense and are intended to embrace every officer, whether state, county or precinct."

We see no grounds for his interpretation of this statute. The language is plain and clear and means that an offer to bribe one who has been elected to an office constitutes the defined offense, even though it is made prior to the time he took the oath of office. The date relates to the date of the election. The acts of the commissioners court thereafter, in canvassing the returns, declaring the results, and directing the issuance of a certificate of election, are purely perfunctory. The court properly overruled the motion.

The second complaint, relating to the failure of the court to disqualify the sheriff and his deputies and appoint a constable, or his deputies, to serve the court during the trial of the case, is the next matter for consideration. All deputy sheriffs are appointed by the sheriff himself. Steve Guthrie was the prosecuting witness in the present case. The presumption of law prevails that all officers will do their duty honestly and fairly and in the absence of a showing that they will not do so, it is within the sound discretion of the trial judge as to whether or not they should be replaced in the performance of the duties involved. Evidence was offered on the subject when the matter was presented to the court. This was heard and passed upon by the Honorable Winter King, trial judge. T. G. Nowlin, who acted as bailiff of the court, testified that he would act fairly and impartially, and that he would not undertake to influence the jury in arriving at a verdict in the case. There is no indication that he did so. The court evidently knew the bailiff. He reposed confidence in him and passed on the question of fact at issue. We see no grounds upon which it may be disturbed.

The third question discussed must rest upon the correctness of the contention made that the indictment should be quashed. Admittedly, there is no such officer as "sheriff-elect." That term as used in the indictment and explained by the evidence could mean nothing further than that Steve Guthrie had been elected sheriff and had not, at the time alleged, taken the oath of office. The court properly refused to instruct the jury that Steve Guthrie was not "sheriff-elect" until the votes had been canvassed by the commissioners court.

Another special requested charge was on the issue of whether or not the matter of the bribe originated with Steve Guthrie

or the accused. We find no evidence which would raise this issue, and the court properly refused it. The officer had the right to lead him on, after he had been approached, and to trap him in doing so. The facts are distinguished from a case in which a county attorney suggests to a party that he offer his assistant a bribe, and thereby becomes an accomplice whose evidence would require corroboration. The elements of entrapment are not in the case now under consideration.

The fourth section of the brief discusses the court's failure to sustain the several objections and exceptions leveled at the court's charge. Most of these exceptions are general and a discussion thereof will not be necessary, in view of the foregoing matters which we have discussed. The court is not required to charge on circumstantial evidence because the evidence to support the conviction was direct. Additional circumstances only corroborated the direct testimony and do not call for a charge on circumstantial evidence. This question has been so frequently decided the citation of authorities will not be necessary.

Other complaints found discussed in the brief relate to the argument of the district attorney, or that of his assistant. Bill of Exception No. 5 quotes the district attorney as saying, "I want to point out to you that, although they have witnesses subpoenaed, they didn't bring a single witness to deny it." Objection was made to this argument on the ground that no testimony was introduced showing that any witnesses were subpoenaed by appellant, and that it was a direct reference to the defendant's failure to testify. The court sustained the objection. Nevertheless, the complaint is made that the injury was done. If this argument had referred to the failure of the defendant to testify it would be reversible error. We are unable, however, to determine from the bill what it had reference to and will not be in position to say that it was error.

Other bills of exception, as qualified by the court, fail to show error. We note the attack made on these bills, and the construction sought to be given to them. Counsel refused to accept the qualified bills and the court, thereafter, prepared his own bills by adopting the bills presented together with the court's qualification. The complication thus brought about is by reason of the death of the lamented District Judge Winter King, before the appeal was perfected. Whatever the objections there may be to the bills become immaterial because there are no bystanders bills to supplant them. If they are not proper, appellant would be no better off for he would have no bills at all.

We have reviewed every complaint presented in this record, and considered the argument and authorities in appellant's brief, and find no error calling for a reversal of the case. The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

In a lengthy motion appellant complains of practically every disposition made of each contention offered by him and evidences much dissatisfaction with such dispositions. We have again gone over this record and will, as much as we are able, endeavor to dispose of such matters as were not written on fully in the original opinion.

It is again contended that the statute upon which this prosecution is based did not contemplate a bribe offered an officer-elect, such as a sheriff-elect. The basis of this contention that Steve Guthrie was not a sheriff-elect seems to be that he had not been thus declared by the proper authority canvassing the votes and returns of the election and thus properly announcing its results. He also contends that the statute, Art. 158, P. C., did not denounce as an offense an offer to bribe a sheriff-elect.

In our original opinion, we quoted the provisions of Art. 158, P. C., and placed a sheriff in the category of the Executive Department of our government, and thus one whose attempted bribe was denounced. Unquestionably, Mr. Guthrie is now a sheriff and was such at the time of this trial, and as such is an officer of the government and had been elected as such in November, 1947, by a vote of the people, although he had not taken the oath of office nor qualified at the time set forth in the indictment. Therefore, appellant says that Mr. Guthrie was not such an officer until he had taken the oath and qualified as such, and the statute did not denounce an effort to bribe him as such officer-elect. We think the statute itself demonstrates the fallacy of such reasoning. It says in part:

"Whoever shall bribe or offer to bribe any executive, legislative or judicial officer after his election or appointment, and either before or after he shall have been qualified or entered upon the duties of his office," etc.

Surely the words "either before or after he shall have qualified or entered upon the duties of his office" contemplates the bribery of an officer who has been elected by the people but has

not yet qualified. Unquestionably Guthrie had been elected by the people in November as the sheriff of Dallas County, and after such election and before he had qualified, the proof shows that certain propositions were made to him which were the basis of this offer to bribe. The canvassing of the returns of an election is merely a declaration of the result—a ministerial duty—and not the election. Nobody votes at such canvassing. The voting as well as the election is past, and it is but an ascertainment of the number of votes cast and for whom, the election having already been had; and from the date of the election until the taking of the oath and filing of the bond, the man receiving the highest number of votes therefor was an officer-elect, and should be designated as such in the event of a proposition of someone for an attempt to bribe such officer-elect.

We next find appellant again complaining under his insistence that if he did make an offer to bribe the sheriff-elect, then such an idea relative to a bribe was originated by Guthrie and Butler and that appellant was the victim of an inducement to violate the law by these two State's witnesses and by them induced to enter into such negotiations relative to such bribe.

It is made clear in Davis v. State, 70 Tex. Cr. R. 524, 158 S. W. 288, that even though an accused had been led to make an offer to bribe by inducing, by words or in writing, acts upon the part of the person thus intended to be bribed, nevertheless, such inductment would not relieve the act of accused of its criminality; it might affect the status of those who had induced the offer to bribe, but could not relieve the odium attached by law to the offense. Evidently, in view of the holding in Davis v. State, supra, the careful trial judge defined the law of accomplice to the jury and submitted to them the question as to whether the witnesses, Guthrie and Butler, were accomplices and their relation to the case in the event the jury found them to be such. We think this was sufficient under the facts here present as to the appellant's contention. See Holmes v. State, 70 Tex. Cr. R. 214, 156 S. W. 1172; Minter v. State, 70 Tex. Cr. R. 634, 159 S. W. 286; Hyde v. State, 73 Tex. Cr. R. 542, 165 S. W. 195.

We think the record is replete with matters corroborative of Guthrie and Butler, regardless of their status as accomplices, although we say we do not think that the testimony indicates in anywise their accompliceship.

We see no harm having resulted to appellant by a refusal of the trial court to appoint a different bailiff to wait upon

the jury herein. There was no reason given why the regular bailiff should be set aside except that he was serving under Sheriff Guthrie; and unless it was shown that he had disqualified himself in some way, we cannot impute error where none is shown. The bailiff testified that he had held a position as deputy sheriff in Dallas County for 20 years continuously; that as bailiff, it was his duty to wait on the court and the jury, to sleep in the same room with them and escort them to their meals and see that they were kept together; that his duties did not require that he assist in the selection of the jury and that as such bailiff, he would follow the instructions of the court to the letter. This matter was not mentioned in the motion for a new trial, where same could have been gone into, if necessary, and no showing was made during the trial nor on the hearing of the motion relative to any misconduct of this deputy sheriff acting as bailiff. We do find an affidavit of some kind attached to this motion for a rehearing in this court which we cannot and do not consider relative to this matter, it having no place in this record at this late hour and after the trial court had lost jurisdiction hereof.

Upon an agreement on the part of appellant, certain Victrola records were produced and played before the jury. They were explained and interpreted by Ranger Naylor, who testified that he made the same, they being records of conversations between appellant, Guthrie and others relevant to the matters charged in the indictment. This was by agreement of all parties. Later, the court reporter, while making up the record for this court, again played these records and transcribed the words coming therefrom; and we find same present in a volume containing approximately 200 pages, being these records reproduced so that same could be taken down by the court reporter and sent to this court. The original records themselves are also present herein. We note the consent to the playing of such records, same being agreed to by appellant. Therefore, the reporter would have been in the same position had a voluminous record been introduced and he be allowed to dispense with taking notes at the time of its reading, but allowed to copy such instrument in his record for the reviewing court.

The matter relative to these records first came up while Ranger Naylor was on the stand and was being questioned about certain conversations purportedly heard by him in Guthrie's home. It early developed that he had made certain Victrola records of such conversations heard by him, much of such conversations not being material to the issues; and upon an attempt

on the part of the State to segregate the material matter and have Naylor testify relative thereto, the following colloquy took place:

"Mr. McCasland (State's Attorney) : That is what we purport and contend and it would take a week probably of the jury's time up here about the dog stories and other things.

"Mr. Mays: We accept the gentleman's proposition. We don't care if it takes a month. We subpoenaed these records in this Court. They know what is in them, and they have been in their possession at all times and we now challenge them, without seeing them, and without knowing them to put them on that graphaphone word by word and start it to grinding right now. * * *

"Mr. Mays: If the Court please, that is made with the distinct understanding that they play word for word and record by record.

"Mr. McCasland: And you agree to that, do you, sir?

"Mr. Mays: We agree to it and challenge you to do it."

Regardless of whether or not the discs played from were in fact introduced before the jury, we think the sounds emanating therefrom were introduced by agreement before the jury and therefore became a portion of the record on appeal, and are properly before this court regardless of where the transcription from these discs were made; they are here present and the transcription therefrom is certified to have been taken from such records that were played before the jury.

The appellant again contends that the State's Attorney commented on the defendant's failure to testify herein by using the following language:

"I want to point out to you that although they have witnesses subpoenaed, they didn't bring a single witness to deny it."

Upon an objection thereto, the trial court instructed the jury not to consider such remark for any purpose. Nevertheless, appellant's attorneys excepted to such statements and moved the court to declare a mistrial, which the court refused to do. The bill itself is incomplete because it does not show what the State's Attorney was referring to in his statement. The record is full of statements made by others in appellant's presence, as well as many statements testified to by witnesses as having been made by appellant in their presence; and the court's bill

shows that there were subpoenaes issued by appellant for several witnesses. So far as the bill is concerned, there may have been a cloud of witnesses around by whom it could have been shown that such a statement was or was not made. The bill fails to show what the statement was; neither does it show what the same was about, nor where the same was made, nor that appellant was present when such statement was supposed to have been made.

In Branch's Ann. Tex. P. C., p. 209, sec. 374, it is said:

"A statement of the prosecuting attorney that no one had contradicted the witnesses for the State is not a reference to defendant's failure to testify where others than defendant could have testified to the facts. Bruce v. State, 53 S. W. 868; Sample v. State, 52 Tex. Cr. R. 505, 108 S. W. 685; Sloan v. State, 170 S. W. 156."

There are further bills complaining of a purported comment on what is termed "defendant's failure to testify", which are not separately written upon, but which have been considered, and in our opinion, evidences no error.

There are further objections to testimony of what was said in appellant's presence by other persons whom it was contended by the State were connected with appellant by means of a conspiracy with him to bribe this sheriff-elect. We think these statements were admissible under the theory of a conspiracy between certain parties and appellant to obtain control of gambling, etc., in the County of Dallas, and to bribe this sheriff-elect relative thereto.

A further bill complains because after the State had rested its case herein and appellant had also announced that he rested, the State was allowed to re-open the case and introduce certain moving pictures in which appellant and others were shown to have been entering the home of Guthrie on November 7, 1947, and again on December 13, 1947, the main objection thereto being that such pictures could not be shown in the statement of facts in the event of an appeal. Objection was also made and an exception was taken to the action of the court in allowing the State to re-open its case. The re-opening of a case is a matter left largely to the discretion of the court. See 42 Tex. Jur. p. 103, sec. 75; Ashley v. State, 107 Tex. Cr. R. 465, 296 S. W. 892.

Relative to the use of the moving pictures, we find that same

were exhibited and shown to the jury and explained by the witness Tisdale while same were being shown to the jury, he being the person taking such pictures. He testified that the pictures accurately and correctly portrayed the matters that they purported to portray. Such matters, he testified, showed the home of Mr. Guthrie on November 7, 1947, and December 13, 1947. These two pictures showed Mr. Guthrie and appellant at one time entering this house together; and again, appellant entering the house and going back to a car in company with Guthrie. The witness who took the pictures was present and seemed to have explained them as they were shown. The pictures themselves are here present in the record, by order of the trial judge, for our inspection, and the film thus presented seems to have been made a part of the record. This moving picture might be placed in the same category as a photograph of a still object or scene which, if pertinent to the issue, is competent evidence if shown by the proof to correctly depict the material matter inquired about. The opinion is expressed that the testimony showing a contract between appellant and Mr. Guthrie at the time alleged in the indictment might have some material bearing on whether they had certain conversations relative to matters charged herein, and their association together, especially when enlarged upon by witnesses, would have a tendency at least toward showing the truth of the testimony of the State's witnesses. It is therefore held to show no error.

On account of the death of the learned trial judge who tried this cause in the lower court and the further fact that it became necessary for the judge succeeding Judge Winter King to pass upon all bills of exception, and the further fact that appellant's attorneys excepted to the qualifications appended to certain bills, thus requiring the latter judge to file his own bills, this record has assumed voluminous proportions, and while we have written at great length hereon, there remains other points raised herein not elaborated upon. Nevertheless, these points have been considered, and while not all entirely free from doubt, they are not thought to be of sufficient importance as to cause a reversal hereof.

We think it to be fairly free from doubt that appellant has received a fair trial, and thus believing, the motion will be overruled.