[Crim. No. 4561. Second Dist., Div. Two. Mar. 6, 1951.]

THE PEOPLE, Respondent, v. DENYS KOZAKIS, Appellant.

Leland E. Zeman for Appellant.

Edmund G. Brown, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of violating section 337a, subdivision 3 of the Penal Code\* after trial before a jury, defendant appeals. There is also an appeal from the order denying his motion for a new trial.

Defendant urges the judgment should be reversed on two grounds, neither of which is tenable: First: that the court erred in receiving remote and prejudicial evidence; and Second: that the evidence presented showed that defendant was entrapped into the commission of the crime by a police officer.

*Facts:* Officer Xydias on October 26, 1949, entered defendant's coffee shop and card club. The officer was dressed in working clothes and had received, prior to his entering defendant's premises, a five dollar bill the serial number of which he and his partner, Officer Drake, had noted.

Upon entering the shop, Officer Xydias asked defendant if he knew anyone that might have a job open for a cook. Defendant replied that he did not, whereupon Officer Xydias went to the back of the premises and proceeded to play pinochle. While playing cards he noted several men hand defendant money with a little slip of paper folded in it, after which defendant placed the money in his pocket and made a telephone call.

---

\*Section 337a, subdivision 3 of the Penal Code reads as follows: "Who, whether for gain, hire, reward, or gratuitously, or otherwise, receives, holds, or forwards, or purports or pretends to receive, hold, or forward, in any manner whatsoever, any money, thing or consideration of value, or the equivalent or memorandum thereof, staked, pledged, bet or wagered, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever; . . ."

After playing cards for some time Officer Xydias took a newspaper to the front counter of the shop and opened it to the racing form portion. Defendant came up to him and said, "Well, you better take that away, it doesn't look so good up front here. There might be someone looking." The officer then went back to a table and tore off a corner of the newspaper. On the piece of paper he made the notations, "B.M.7— 'Not Very Much' 2w" with his initials "T.X." He explained that "B.M." stood for Bay Meadows, the "7" for the seventh race, "Not Very Much" for the name of a horse running in the 7th race at Bay Meadows that day, and the "2w" for two to win.

He then handed the premarked five dollar bill and the slip of paper to defendant who opened it, read it and said, "Two to win?" Defendant put the five dollar bill in his pocket and gave the officer three one dollar bills. Officer Xydias then left the shop and shortly returned with Officer Drake and placed defendant under arrest. Among the money found in defendant's pocket was the five dollar bill given him by Officer Xydias. There were two blank checks found near the cash register in the shop which had pencil writing on the reverse side.

Officer Xydias and defendant both spoke Greek fluently and after defendant's arrest he asked the officer why he had arrested one of his fellow countrymen, to which the officer replied it was his duty to arrest anyone who was in the wrong, whereupon defendant said, "Well, it will cost me a considerable amount of money for attorneys and time lost, and so on. Why cannot we settle it right here. I will be more than happy to give you $500 and you can walk out of the store."

Defendant admitted to Officer Drake that he had received the five dollars from Officer Xydias and stated that the names and numbers written on the back of the blank checks were the names of people and the amount of money each owed him.

*Defendant's contentions:* First: *(a) The court erred in receiving in evidence Officer Drake's testimony that a "phone spot" was ". . . a location that has usually two or more phones where a man might phone, one person or more answers phones when they ring, and accepts wagers over the telephone, records the wagers on professional betting markers; these phone calls come from various persons who have made contacts prior to that time and are acting as agents for this particular phone spot."*

This evidence considered in connection with Officer Xydias' testimony that he saw several men enter defendant's coffee shop, hand him money with a little slip of paper, after which defendant placed the money in his pocket and made a telephone call, tended logically to give rise to a reasonable inference that defendant was engaged in the practice of receiving and making wagers, and tended to corroborate Officer Xydias' testimony that defendant had agreed to make a wager for him.

■    Such evidence was therefore properly admissible, the rule being well stated by Mr. Chief Justice Gibson in *People* v. *Woods,* 35 Cal.2d 504, at page 509 [218 P.2d 981] as follows: "It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge. (*People* v. *Dabb,* 32 Cal.2d 491, 499, 500 [197 P.2d 1]; *People* v. *Peete,* 28 Cal.2d 306, 314, 315 [169 P.2d 924].)"

It is therefore immaterial that the evidence might also have tended to prove defendant guilty of a separate and independent offense.

■    *(b) The court erred in receiving in evidence People's exhibit 2 consisting of two blank check forms with writing on the reverse side.*

Defendant did not object to the receipt of such evidence at the time of trial, therefore any objection which might have been made to such testimony was waived. An objection to the introduction of evidence may not be made for the first time on appeal. (*People* v. *Odom,* 72 Cal.App.2d 72, 74 [164 P.2d 68].)

■    Second: *The evidence disclosed that defendant was entrapped by Officer Xydias.*

This contention is predicated upon the fact that defendant testified that he had four or five conversations with Officer Xydias during the afternoon at which times the officer requested him to place bets for him, and that he refused, but that finally the officer by his importunities wore him down.

Such contention is devoid of merit. Officer Xydias' testimony that he asked defendant *just once* to take the bet necessarily contradicted defendant's story that the officer had asked him on a number of occasions to take it, and the jury was entitled to believe the officer's testimony rather than that of defendant.

.

There is likewise no merit in defendant's contention that the intent to commit the crime originated in the mind of Officer Xydias. It was for the jury to determine from all of the evidence whether the intent originated in defendant's mind or in the officer's mind and its finding supported by substantial evidence, as in the instant case, is binding upon an appellate court. (*People* v. *Lagomarsino*, 97 Cal. App.2d 92, 97 [217 P.2d 124].)

The judgment and order are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.