JOHNNY PIERCE COOPER V. STATE

No. 27,891. January 11, 1956.

State's Motion for Rehearing Denied April 4, 1956.

*Z. E. Coombes,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *Harold G. Clark, Jr., Charles S. Potts, George P. Blackburn,* Assistants Criminal District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is procuring; the punishment, 2 months in jail and a fine of $100.00.

Officers Woodall and Turrigiano of the vice squad of the Dallas city police testified that on the night in question, while dressed in civilian clothes, they went to the motel where appellant was employed as a porter and that Officer Turrigiano had a conversation with the appellant in the office. Turrigiano told the appellant that he was from San Antonio, and we quote from his testimony as follows:

"Well, to the best of my knowledge, I asked him if he had a girl available, one or two. He said he didn't know, then after some other conversation which I don't recall right now — he finally agreed to get us a girl."

Following this, a woman presented herself at a cabin in which the officer was waiting and discussed the price she charged for various forms of sexual intercourse, whereupon she was arrested. The appellant was then found and arrested.

The appellant, testifying in his own behalf, stated that before going to work at the motel four days before the offense herein charged he had worked as a porter at Merchants Delicatessen

and that during those four days of employment at the motel no one had approached him in an effort to get him to secure women for illicit purposes. He stated that when the officers arrived at the motel on the night in question he told Officer Turrigiano that he had no girls and didn't know any. He testified further that the officer gave him fifty cents and suggested that he call some porters at other hotels and find out from them where to get a girl; that he did so and, after calling several hotels, he finally reached his friend Washington, who worked at the St. George, and told him that he had two men in a certain numbered cabin at his motel who wanted a date. He stated that he did not know the girl or talk to her over the telephone and did not see her when she got to the motel until after she was arrested. He testified that he quit his job at the motel following his arrest and had not followed that line of employment since.

The sole question presented for review is the failure of the trial court to charge on the defense of entrapment.

Recently, in Brown v. State, (page 85 this volume), 282 S.W. 2d 224, we held that the testimony of Brown did not raise the issue of entrapment. In that case, Brown testified that he "called Joyce from a list of girls' phone numbers which he had." His defense was that he was taking orders from an officer of the law when he called the prostitute.

But do we have such a case here? We think not.

In Peery, v. State, 138 Tex. Cr. R. 155, 134 S. W. 2d 283, 285, we said:

"The word 'entrapment' has been defined legally as 'the seduction or improper inducement to commit a crime, and not the testing by trap, trickiness, or deceit of one suspected.' U. S. v. Wray, D.C., 8F. 2d 429. Mr. Webster defines the word 'entrap' as 'to catch as in a trap by artifice.' The 'entrapment' as used in a legal sense carries with it the presumption that the officer or agent manufactures the offense and then incites accused to commit the offense for the purpose of prosecution."

Entrapment has also been defined as " 'the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him.' " State v. Marquardt, 139 Conn. 1, 89 A. 2d 219, 31 A.L.R. 2d 1206; Sorrells v. U. S., 287 U. S. 435, 53 S. Ct. 210, 77 L. ed. 413, 423, 86 A. L. R. 249; U. S. v. Wray, D. C., 8 F. 2d 429, 430.

It is the general rule that where the criminal intent originates in the mind of the accused the fact that the officers furnish the opportunity for or to aid the accused in the commission of a crime constitutes no defense to such a prosecution. Stevens v. State, 133 Tex. Cr. R. 333, 110 S. W. 2d 906; Sorrels v. U. S., supra; State v. Marquardt, supra; 22 C. J. S., Criminal Law, sec. 45, p. 99. However, if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, this is entrapment, and in law may constitute a defense to such crime. Sorrells v. U. S., supra; State v. Marquardt, supra; Butts v. U. S., 8 Cir., 273 F. 35, 18 A. L. R. 143; O'Brien v. U. S., 7 Cir., 51 F. 2d 674; Morei v. U. S., 6 Cir., 127 F. 2d 827; 9 Texas Law Review 276; 41 Yale Law Journal 1249; 15 Am. Juris. 25; 22 C. J. S., Criminal Law, sec. 45, p. 99.

Where the evidence raises an issue as to whether the intent to commit a particular crime originated in the accused's mind or in the mind of the officer and whether the accused was induced to act in a manner in which he would not otherwise have except for such inducement, then the question of entrapment is one of fact and should be submitted to the jury. Sorrells v. U. S., supra; State v. Marquardt, supra; People v. Kozakis, 102 Cal. App. 662, 228 P. 2d 58; People v. Gallagher, 107 Cal. App. 425, 290 P. 504; United States v. Sawyer, 3 Cir., 210 F. 2d 169. According to the appellant's testimony, he was not in the business of procuring, knew no prostitutes, and the arresting officers were the first persons to mention the subject to him. If this were true, then the officers were not by artifice catching the appellant in his established business but by their inducement caused him to commit a criminal act which he would not have committed except for such inducement.

We have concluded that the testimony of the appellant raised the issue of entrapment which should have been submitted to th jury under appropriate instructions.

Upon another trial, the state will no doubt file a new information so that it will follow the wording of the complaint.

The judgment is reversed and the cause remanded.

WOODLEY, Judge (concurring).

Whether entrapment is properly called a defense to crime in this state or not, if, as he testified, appellant had not previous-

ly been engaged in similar activity and had no purpose or intent of doing so, and the state is seeking to prosecute, convict and punish him for an offense which was envisaged, planned and its commission by appellant activated by the officer for the sole purpose of obtaining his conviction for a crime which is the product of the creative activity of the officer, common justice required that the appellant be permitted to prove such facts.

If shown or found to exist, the consumation of so revolting a plan ought not to be permitted by any self-respecting tribunal. Sorrells v. U. S., 287 U. S. 435, 77 L. Ed. 413.

The officer in question admitted no such scheme to secure the conviction of innocent persons by inducing them to violate the law in order that he might prosecute them therefor. If he had, the writer entertains no doubt that appellant would have received prompt protection at the hands of the prosecuting attorney and from the trial court.

The issue, however, was raised by appellant's testimony and was an appropriate one for the jury, and the requested charge appears to be sufficient to call the matter to the attention of the court.

DAVIDSON, Judge (dissenting).

As I construe and understand this holding of my brethren, they have licensed the commission of violations of the law and opened the way for the commission of illegal acts without penalty. Here is what they hold:

If, for the mere purpose of instituting a criminal prosecution against a person, a peace officer induces such person to commit a crime which he had not contemplated committing and as a result of that inducement such person commits a crime, no prosecution will lie, because the person so induced has committed no crime because he was entrapped by the officers into committing the crime.

My brethren quote one of the definitions of the term "entrapment," as follows:

" ' . . . the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him.' "

Further, and in connection with that definition, my brethren say:

"However, if the criminal design originates in the mind of the officer, and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, this is entrapment, and in law may constitute a defense to such crime."

These two pronouncements of my brethren demonstrate, of and within themselves, the correctness of the proposition I first asserted. They magnify those pronouncements and make sure that no one will misunderstand their holding, for they reverse this case because the trial court failed to give the following charge to the jury:

" 'You are further charged that if you find and believe from the evidence or if you have a reasonable doubt thereof that the defendant, Johnny Pierce Cooper, was induced at the instigation of Officer Turrigiano to commit the offense charged, if same was committed, with a view of prosecuting him for the same, without prior knowledge or information that the defendant had committed similar offenses, you will find the defendant not guilty and say so by your verdict.' "

It is apparent that what my brethren hold is that if a peace officer, by entrapment, induces another person to commit a crime, that person may not be persecuted or convicted of the crime because he was entrapped by the officer into committing it. So, neither the peace officer nor the person actually committing the crime may be punished therefor. Under the facts here presented, my brethren conclude that the officer was guilty of entrapping the appellant into committing the crime of procuring. Therefore, under the rule of law, as announced by my brethren, appellant should have been awarded an instructed verdict of not guilty, because there was no issue under the facts as to the entrapment.

In this connection, I call attention to the fact that appellant testified as a witness in his own behalf and admitted his guilt of the crime of procuring, which was the crime charged against him.

Under the holding, then, of the majority of the court, the person who is entrapped by peace officers into committing a

crime cannot be guilty thereof, even though he admits his guilt under oath.

Such a doctrine is, to me, not only palpably erroneous but unsound and unsafe; it approaches absurdity.

As demonstrating what I mean, let us assume the following:

For the purpose of inducing another to commit a crime in order that he may prosecute him therefor, a peace officer approaches that person and suggests that he commit the crime of assault upon another, or the crime of theft, burglary, or any other offense. Prior thereto, the person so approached had never entertained the idea of committing a crime; but the suggestion has been implanted in his mind and he yields thereto and commits the crime. He is arrested and charged with the crime he has committed. Upon the trial of the case the officer admits the facts and that he entrapped the accused into committing the crime. The accused admits the commission thereof and testifies that he committed the crime because of the suggestion of the officer. None of these facts is disputed. Under the holding of my brethren here, the accused would be entitled, in such an instance, to an instructed verdict of not guilty because he had committed no crime—and this, notwithstanding the fact that an individual has been assaulted or a theft or burglary has been actually committed.

Never, until today when my brethren announced it, has that doctrine been recognized in Texas.

Judge Woodley, speaking for himself on motion for rehearing and for the writer of this opinion, in as late a case as Ivy v. State, 161 Tex. Cr. R. 371, 277 S. W. 2d 713, declared:

"The courts of this State have not previously held that entrapment was a defense to crime, though the inducement was by an officer or agent of the State."

That holding is now no longer adhered to by a majority of this court who have now held that entrapment is not only a complete defense but prevents the accused from confessing to or admitting the crime.

It is my understanding that this court has always recognized the doctrine of entrapment by peace officers, but it has never before recognized the fallacy that no offense has been

committed by one entrapped into committing it. To the contrary, rule in Texas has always been that when a peace officer entraps another person into the commission of a crime he becomes an accomplice thereto. And in order to convict upon his testimony, the state must corroborate his testimony the same as that of any other accomplice witness, and, when corroborated, a conviction will be sustained.

I call attention to the fact that, here, the officer has fully admitted his guilty part in the crime.

The views here expressed were, in effect, those expressed by me in my dissent in the case of Brown v. State, (page 85, this volume), 282 S.W. 2d 224. The Brown case was affirmed upon the proposition that the facts failed to show an entrapment even though the accused did commit the crime of procuring at the instance and suggestion of the officers.

My brethren say that this case differs from the Brown case. I fail to see wherein or how they reach that conclusion. If entrapment is shown in this case, it was shown in the Brown case. In so far as the law is concerned, the difference between the Brown case and this case is, in my opinion, the same difference that exists between "six" and "a half dozen"—a difference only of words meaning the same thing!

Finally, my brethren cite authorities from our federal courts as supporting their holding here.

In so far as I am concerned, I am going to follow the Texas rule which has long been established and which is legally sound.

If federal courts support the holding of the majority of this court, here, they are wrong and this court ought not to follow them.

In his concurring opinion, my brother Woodley goes much further than does the majority opinion, for he adds thereto a new and more far-reaching rule.

The rule to which he adheres is that if one on trial for a crime testifies that he committed the same at the suggestion of a peace officer, but for which suggestion he would not have done so, and prior to such suggestion had never committed such crime or contemplated the commission thereof, he would be entitled to be acquitted, upon the jury's believing or having a reasonable

doubt of such facts. Judge Woodley says that common justice would so require and that such defense may be raised and shown by the testimony only of the accused; he points out that in this case the officer made no admission that there was a "scheme to secure the conviction of innocent persons by inducing them to violate the law in order that he might prosecute them therefor."

The fallacy of such rule is demonstrated by the following assumed case:

"A" is on trial for the crime of robbery. The evidence overwhelmingly shows his guilt. He testified that he committed the crime but that he was entrapped into doing so by "B," a peace officer, in that "B" came to him and suggested that he do so; that he had never theretofore committed such a crime nor had he formed any idea of committing this robbery; that after studying over the matter for a time he decided that the suggestion of the officer was a good one and that he would commit and did commit the robbery; and that he would not have done so but for the suggestion of "B," the peace officer.

Under such a state of facts, the holding of my brethren would be that "A" would be entitled to have the jury instructed that if they believed or had a reasonable doubt thereof "A" would not be guilty of the crime of robbery.

When did the suggestion of another become not only a justification but a complete defense to the commission of a crime by the accused? Never, until my brethren here so decree.

My brother Woodley says that no self-respecting tribunal would permit "A" to be convicted upon a finding that the facts testified to by the accused were true.

Such, indeed, is a terrible indictment of those great judges who have heretofore graced this court and who steadfastly refused to adopt and agree to such a holding as that which my brethren here announce.

This conviction should be affirmed, and the Texas doctrine adhered to.

For the reasons stated, I respectfully enter my dissent to the reversal of this case.

ON STATE'S MOTION FOR REHEARING

WOODLEY, Judge.

The so-called Texas rule stated in 12 Tex. Jur. p. 309, Sec. 63, is supported by the case of Davis v. State, 70 Tex. Cr. R. 524, 158 S. W. 288, where this court declined to recognize entrapment as a defense to the offense of offering to bribe an assistant county attorney.

While the distinction may or may not be valid, there is authority to the effect that the defense of entrapment cannot be successfully interposed for an offense against public welfare such as bribery and accepting a bribe by a public official. State v. Daugherty, 93 Atlantic 98 (New Jersey).

As stated by Judge Harper in the Davis case, "Considerable legal hairsplitting has been indulged in by courts and text-writers in discussing this subject (entrapment)."

Though a number of Texas cases may be found which deal with the entrapper as an accomplice witness, in no case involving offense other than offering a bribe to a public official decided since Davis v. State have we found a statement that the defense of entrapment recognized in the Federal courts and in most of the states is not available in Texas.

Nor does the research made by the writer disclose a single instance where the great judges who have graced this court in the past have affirmed a conviction under a record showing that an otherwise innocent person had been convicted of an offense which he did not purpose to commit and would not have committed except for the inducement of an officer whose sole purpose was to secure his conviction.

The attitudes of illustrious former judges of this court toward entrapment are revealed in the following opinions.

Guyer v. State, 37 Tex. Cr. R. 489, 36 S. W. 450, Judge Henderson:

"We can conceive of no conduct more reprehensible on the part of officers, whose duty it is to prevent crime, and 'nip it in the bud,' instead of so doing, to lend aid and encouragement in carrying it out. - - -

"Some Courts have gone a great way in giving encourage. ment to detectives in some very questionable methods adopted by them to discover the guilt of criminals, but they have not yet gone so far, and I trust never will, as to lend aid or encouragement to officers who may, under a mistaken sense of duty, encourage and assist parties to commit crime in order that they may arrest and have them punished for so doing."

In Smith v. State, 61 Tex. Cr. R. 328, 135 S. W. 154, reversed on other grounds, Presiding Judge Davidson had the following to say about entrapment:

"In regard to this phase of the bill, we desire to say the state's case was made by the hired detective, who worked up cases, and in this case developed the fact that he had induced the appellant to secure the whisky for him with a view and for the purpose of instituting this very prosecution. In every case Jordan had induced the violation of law to which he testified. This manner of instituting prosecutions against the citizenship of the state and inducing them to commit crime is to be deplored. While it is eminently proper that officers should be deligent in ferreting out crime and violations of the law, yet it does not occur to us that the theory of our law is predicated upon the idea that men should be induced to violate the law in order that a prosecution may be brought about. The machinery of the state should be put into operation to detect and punish crime, but not to organize and institute it. The prevention of crime is one of the main purposes of our law, not its encouragement or propagation."

In Scott v. State, 70 Tex. Cr. R. 57, 153 S. W. 871, reversed on other grounds, Presiding Judge Davidson speaking for this Court said:

"The writer has had occasion heretofore to criticize the character and manner of inducing men to commit crime as is evidenced by this record. This witness testifies, and is not *un*controverted or contradicted, that the sheriff agreed to give him $10 for each case he would 'turn in' and additional money or compensation if a conviction should occur. The officers are not justified in inducing men to commit crime or in employing others to induce them to commit crime in order that prosecutions may be instituted. It is his duty as an officer, where he understands what parties are engaged in crime, to use every effort legitimate and permissible by law to detect and ferret out crimes and bring criminals to trial and justice. But this does

not justify him in employing parties to go out and induce the citizens to commit crime that prosecutions may be instituted and carried on. We here call the attention of the Legislature to such matters and would suggest that appropriate legislation be enacted to prevent matters of this sort occurring. This matter was thoroughly gone over by Judge Hurt in Dever v. State, 37 Tex. Cr. R. 396, 30 S. W. 1071. See, also, the case of Bush v. State, 151 S. W. 554, decided at the present term of this court."

Without regard to whether this court, in deciding Davis v. State, supra, held the view that the defense of entrapment was not available in this state under any set of facts, later opinions of this court where the defense of entrapment was relied upon, viewed in the light of the record showing the issues raised, indicate that had the facts supported the plea or claim, entrapment would have been held to be a defense.

In Cliff v. State, 162 S. W. 2d 712, the state's case of procuring was made by the officer claimed to have been guilty of entrapment. His testimony was fully corroborated by the testimony of the prostitute.

The record shows that Cliff requested the following special charge: "Gentlemen of the jury, you are instructed further, that if you believe from the evidence that the idea to have the defendant procure and obtain said female or some other, first originated with said prosecuting officer, R. P. Riley, and he personally suggested and solicited the defendant to obtain the said female alleged herein, or some other female, for unlawful sexual intercourse, or if you have any reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty."

Judge Hawkins disposed of the exception to the refusal of this charge, saying "We think the issue of entrapment was not raised by the evidence."

The fact that the exception to the failure to give the charge was disposed of on the ground that the issue of entrapment was not raised by the evidence presupposes that had the evidence raised the issue, a charge upon entrapment as a defense would have been proper.

The Cliff case is of special significance because it dealt with the offense of procuring, the distinction between it and the case before us being that here the issue was raised by the evi-

dence, whereas in the Cliff case the court properly held that it was not.

Peery v. State, 138 Tex. Cr. R. 155, 134 S. W. 2d 283, cited in our original opinion, was a case charging the unlawful practice of medicine, the issue of entrapment as a defense was raised in the following manner.

A motion to quash and suppress the evidence was filed, alleging that certain officers did, with criminal intent, entice and entrap the defendant Peery into the commission of an offense that would otherwise not have been consummated.

Peery, in addition to moving for an instructed verdict, requested the following special charge, and reserved an exception to its refusal:

"Gentlemen of the jury, the prevention of crime is one of the main purposes of our laws, not its encouragement or propagation. If you find that the Defendant was induced and lured into the commission of the offense as charged, if he did, by an officer or officers of the law, or their agents, or that said officer or officers, or their agents, employed parties to go out and induce the Defendant to commit the offense as alleged, if he did, I instruct you that a conviction cannot stand, and the Defendant must be set free. - - - "

The state's brief, signed by Judge Davidson of this court, then state's attorney, contains the statement "under the doctrine of entrapment in this state, the entrappers are accomplices only," and reasoned that, since appellant made no request for an instruction on accomplice testimony, the question of entrapment was not before the court. It is apparent from his dissenting opinion herein that Judge Davidson adheres to the views expressed in said brief.

Upon original submission of the appeal in Peery v. State it was held that the officers were not shown to be accomplices save one, and that conceding that this one was an accomplice, his testimony was fully corroborated.

Peery then filed a motion for rehearing complaining that he had made no contention that any witness was an accomplice witness; that he did not move for instructed verdict on the ground that all of the testimony in the case was that of accomplice witnesses, and that the question of accomplice witnesses

was not before the court. He stated the rule of law he was relying upon as follows: "Where the criminal intent originates in the mind of the entrapping person, and the accused is lured into the commission of the offense charged in order to prosecute him therefor, it is the general rule that no conviction may be had, though the criminality of the act is not affected by any question of consent." He cited many decisions from other jurisdictions supporting such rule.

Such being the respective contentions of Peery and the state, Judge Graves wrote on rehearing:

"He again complains that the doctrine upon which he requested his peremptory instruction was on account of his contention that the appellant was lured into this violation, and entrapped by the State's witnesses into treating Mrs. Alonso, and, therefore, because of such fact the law will not permit a conviction under such circumstances to stand. With the application of such a principle to these instant facts we can not agree. - - -

"In this cause we fail to see any species of entrapment in this agent furnishing the money to Mrs. Alonso, and telling her to go to appellant for treatment, and in her going to appellant and being treated for an ailment from which she was suffering."

Here again, if the doctrine of entrapment as a defense under no set of facts was considered by the then members of this court to be the law of Texas, as here contended, the court did not see fit to so announce. On the other hand, the court declined to apply the principle to the facts in Peery's case, failing to see *any species of* entrapment.

Judge Graves cited with approval the cases of Swallum v. U. S., 39 F. 2d 390, and U. S. v. Wray, 8 F. 2d 429. Both of these cases recognize the defense of entrapment which this court properly held was not raised by the evidence in Peery v. State, supra, and the Federal court properly held was not raised by the evidence in Swallum v. U. S., or in U. S. v. Wray, but which is raised by appellant's testimony in the case before us.

Sometime later, writing on rehearing in Jones v. State, 151 Tex. Cr. Rep. 519, 209 S. W. 2d 613, wherein the conviction was for offering a bribe to the sheriff of Dallas County, Judge Graves cited with approval the holding in Davis v. State, supra, to the effect that the inducement by the officer would not relieve the act of the accused of its criminality.

Whether or not the defense of entrapment is available in a prosecution for bribery or offering to bribe an officer is not before us.

In view of the foregoing, and of the many decisions from other jurisdictions upholding entrapment as a defense, we remain convinced that a conviction for procuring upon the facts as testified to by appellant, if found by the jury to be true, should not be permitted to stand.

The invocation of the defense of entrapment necessarily assumes that the act charged was committed. To decline to reverse upon the theory that appellant had admitted his guilt in that he called the Porter Washington and conveyed to him the officer's wishes, or to hold that his testimony to that effect furnished the required corroboration of the officer's testimony, would be to deprive him of any relief upon the ground that he was entrapped. Hamilton v. U. S., 221 F. 2d 611.

The State's motion for rehearing is overruled.

DAVIDSON, Judge (dissenting on State's Motion for Rehearing.)

The opinion of my brethren upon the state's motion for rehearing strengthens me in my conviction that the majority opinion and the doctrine announced therein are wrong and exceedingly dangerous.

A paragraph in the state's motion for rehearing so amply presents my views that I have decided to insert it, here, as a part of this, my additional dissent. It reads as follows:

"Such a holding is at variance with the philosophy of the laws of Texas. Such holding is contrary to the doctrine of stare decisis in Texas on the same subject; it amounts to the creation by the Court of Criminal Appeals of a defense for the convicted procurer which the legitimate law-making authority of Texas— the Legislature—has never seen fit to create, and unless this be a special law for the benefit of this low character of offender, then it is a general law enacted by this court which makes the murderer, the rapist, the thief, the arsonist, the abortionist, and all other criminals exempted from prosecution for their crimes against the rest of the people and against the peace and dignity of the State, provided the crime is instigated by some deputy constable or other peace officer for the purpose of catching the offender and prosecuting him . . . "